**Slip Op. 05-110**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | | |
|---|---|---|
| | x | |
| International Labor Rights Fund, | : | |
| | : | |
| Global Exchange, | : | |
| | : | |
| and | : | |
| | : | |
| Fair Trade Federation, | : | **Court No. 04-00543** |
| Plaintiffs, | : | |
| | : | **Before: Judith M. Barzilay, Judge** |
| v. | : | |
| | : | |
| United States, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| Chocolate Manufacturers Association, | : | |
| | : | |
| Defendant-Intervenor. | : | |
| | x | |

**OPINION**

[Defendant's Motion to Dismiss granted.]

Decided: August 29, 2005

*Terrence Collingsworth,* (*Derek Joseph Baxter*), for Plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Jeanne E. Davidson*, Deputy Director, (*Stephen C. Tosini*), Trial Attorney, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, for Defendant.

*Collier, Shannon, Scott, PLLC*, (*Paul C. Rosenthal*), *Jennifer E. McCadney, Michael R. Kershow*, for Defendant-Intervenor.

**BARZILAY, JUDGE:**

Plaintiffs International Labor Rights Fund ("ILRF"), Global Exchange ("GX"), and Fair Trade Federation ("FTF") (collectively "plaintiffs"), all non-governmental organizations working in the field of labor rights, filed suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. Plaintiffs are seeking declaratory and injunctive relief against George Bush, President of the United States, the Secretary of Homeland Security, the Commissioner of Customs and Border Protection (formerly the Commissioner of Customs), the Assistant Secretary of Homeland Security for the Bureau of Immigration and Customs Enforcement (BICE), and the United States Department of Homeland Security (DHS) (collectively, "defendants") for their failure and refusal to 1) investigate, as required by 19 C.F.R. § 12.42, credible allegations that cocoa imported to the United States from Cote d'Ivoire[1] is produced by forced child labor; 2) require cocoa importers to show that their imports are not the product of forced child labor; and 3) prohibit the importation of merchandise that is shown to be the product of forced child labor as required by 19 U.S.C. § 1307 (1997), commonly known as section 307 of the Tariff Act of 1930.

Defendants responded with a motion to dismiss Plaintiffs' complaint pursuant to USCIT R. 12(b)(1), claiming that all three lack standing to bring such claims before the court, that the complaint was untimely filed, and that the President cannot be a named defendant. The parties have agreed to dismiss the President from this action.

---

[1] Formerly known as the Ivory Coast. *See* CIA World Factbook, at http://www.cia.gov/cia/publications/factbook/geos/iv.html

## Background

Section 307 of the Tariff Act[2] and its accompanying regulations prohibit the importation

of goods derived from forced labor when certain domestic economic preconditions have been

met.  The regulations provide for "[a]ny person outside the Customs Service who has reason to

believe that merchandise produced [by forced or indentured child labor] is being, or is likely to

be, imported into the United States" to "communicate his belief to any port director or the

Commissioner of Customs" and in doing so, to also provide "detailed information as to the

production and consumption of the particular class of merchandise in the United States and the

names and addresses of domestic producers likely to be interested in the matter."  19 C.F.R.

§12.42.  Upon receipt of any such communication, the Commissioner of Customs is required to

---

[2] Section 307 states:
Convict made goods; importation prohibited

All goods, wares, articles, and merchandise mined, produced or manufactured
wholly or in part in any foreign country by convict labor or/and forced labor
or/and indentured labor under penal sanctions shall not be entitled to entry at any
of the ports of the United States, and the importation thereof is hereby prohibited,
and the Secretary of the Treasury is authorized and directed to prescribe such
regulations as may be necessary for the enforcement of this provision. The
provisions of this section relating to goods, wares, articles, and merchandise
mined, produced, or manufactured by forced labor or/and indentured labor, shall
take effect on January 1, 1932; but in no case shall such provisions be applicable
to goods, wares, articles, or merchandise so mined, produced, or manufactured
which are not mined, produced, or manufactured in such quantities in the United
States as to meet the consumptive demands of the United States.

"Forced labor", as herein used, shall mean all work or service which is exacted
from any person under the menace of any penalty for its nonperformance and for
which the worker does not offer himself voluntarily. For purposes of this section,
the term "forced labor or/and indentured labor" includes forced or indentured
child labor.  19 U.S.C. § 1307 (2002).

undertake an investigation that is warranted by the circumstances of the particular case. *Id.* Pursuant to these regulations, plaintiffs submitted a petition regarding the use of child labor in the cocoa industry of Cote d'Ivoire. This original petition, submitted on May 30, 2002, requested that Customs investigate allegations of child labor pursuant to the implementing regulations, but did not include information regarding production of cocoa in the United States or the names and addresses of interested domestic producers – apparently because no significant domestic cocoa production industry exists in this country. If Customs' investigation were to reveal the use of forced labor on any of the cocoa plantations or farms in Cote d'Ivoire, plaintiffs argue, then defendants would be required to determine whether the cocoa and any products derived from the illegal cocoa were imported to the United States. *Id.* Plaintiffs took action under these statutory and regulatory directives because they claim conditions in Cote d'Ivoire warranted an investigation by Customs of forced child labor in the cocoa production industry.

Plaintiff ILRF is a Washington, D.C.-based advocacy organization dedicated to improving global labor standards. *Compl.* at ¶¶ 15, 19. ILRF achieves its goal of promoting the enforcement of labor rights internationally through public education and mobilization, litigation, legislation and other collaborative efforts with labor, government and other business entities. *Id.* at ¶ 15. Plaintiff GX is a San Francisco-based human rights advocacy organization with over twelve thousand dues-paying members and forty thousand associated members. *Compl.* at ¶ 19. GX is dedicated to "promoting environmental, political and social justice globally." *Id.* at ¶ 19. In addition, GX operates four retail stores, as well as an internet-based sales operations, which sell "fair trade" cocoa, which is produced without the use of forced child labor. Plaintiff FTF is a

Washington, D.C.-based association of "fair trade" wholesalers, retailers, and producers, whose members are committed to providing living wages and better employment opportunities to disadvantaged farmers and artisans worldwide. *Id.* FTF further claims that its "purpose is to promote the production and consumption of fair trade goods . . . and to represent the interests of producers, wholesalers, retailers, and importers of . . . Fair Trade Certified cocoa." *Id* at ¶¶ 15, 19.

In a letter dated June 13, 2002, Customs accepted ILRF's petition. Customs' letter communicated that it was pleased with plaintiffs' offer to provide further information, and invited plaintiffs and an independent investigator to meet with Customs officials to discuss the submitted evidence. This meeting apparently took place in July, 2002, although it is unclear what came of it. *See Def's Reply Memo in Support of its Mot. to Dismiss* ("*Def's Mot.*"), at 3. On June 30, 2002, a group of organizations, including GX, sent then-Secretary of the Treasury Paul O'Neil a letter outlining the widespread use of child slavery in Cote d' Ivoire's cocoa industry. This letter concluded by asking for "strict and immediate enforcement of the law as embodied under Section 307 of the Tariff Act of 1930." In effect, the letter sent to Secretary O'Neil reintroduced plaintiffs' ultimate goal of invoking section 307 to prohibit the importation of products made with forced child labor.

Almost a year passed without any further discussion. Having no indication that Customs in fact initiated an investigation or had taken any steps to do so, an ILRF researcher traveled to Cote d'Ivoire to update its factual record. Plaintiff ILRF states that it confirmed the continued existence of forced child labor in the Ivorian cocoa industry and sent another letter to the

Commissioner of Customs and Border Security on May 15, 2003, urging him to act on ILRF's original petition. Then, on June 30, 2003, with both GX and FTF participating in the petitioning process, plaintiffs sent a letter to Customs asking that the law and regulations be enforced with respect to this matter. Again receiving no response, Plaintiffs ILRF and GX filed suit in July 2003, in the District Court for the District of Columbia, seeking to compel Customs to enforce section 307 and the accompanying regulations. In August, 2003, the District Court dismissed the case on jurisdictional grounds. Plaintiffs then filed the present action in the Court of International Trade in October of 2004, seeking once again to compel Customs to undertake its ostensibly required investigation. Plaintiffs claimed they have confirmed the use of forced child labor in Cote d'Ivoire's cocoa industry, and request that the court issue an order, *inter alia*, directing Customs to (1) investigate allegations of forced child labor in Cote d'Ivoire, and (2) upon identifying forced child labor in any imports of cocoa from Cote d'Ivoire, issue an order prohibiting entry of such merchandise into the United States.

## Discussion

Defendant moves to dismiss on two separate grounds: that plaintiffs' action is untimely and that plaintiffs lack standing. The court will discuss the dispositive issue of standing.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(3), (4), which grants the court exclusive jurisdiction to review matters arising out of laws providing for embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of health and safety, and provides for enforcement with respect to such matters.

I.      **Standing**

Plaintiffs, as the parties invoking federal jurisdiction, have the burden of proof and

persuasion as to the existence of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

(1992); *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  The question of standing involves the

determination of whether a particular litigant is entitled to invoke the jurisdiction of the federal

court in order to decide the merits of a dispute or of particular issues.  *Warth v. Seldin*, 422 U.S.

490, 498 (1975).  Where the standing of a litigant is placed in issue the court must undertake a

two-step analysis, which involves both the constitutional limitations and the prudential

limitations that circumscribe standing.  *Id.*  As a threshold matter, the court must insure that the

litigant satisfies the case or controversy requirements of Article III of the Constitution.  *Simon v.*

*Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 39 (1976).  Once the court

determines that the litigant satisfies the constitutional aspects, it must consider whether any

prudential limitations restrain the court from exercising its judicial power.  *Gladstone, Realtors*

*v. Village of Bellwood*, 441 U.S. 91 (1979).  In determining standing, the court must undertake a

careful judicial examination of a complaint's allegations to ascertain whether the particular

plaintiff is entitled to an adjudication of the particular claims asserted.  *Allen v. Wright*, 468 U.S.

737, 752 (1984).[3]

A.      **Constitutional Standing**

The principal limitation imposed by Article III is that a litigant seeking to invoke the

---

[3] As mentioned above, defendant brought its challenge pursuant to USCIT R. 12(b)(1). USCIT Rule 12 provides for dismissal on the basis of a lack of subject matter jurisdiction, and also on the closely analogous motion to dismiss for failure to state a claim upon which relief can be granted.  USCIT R. 12(b)(5).

court's authority must show that he personally has suffered some actual or threatened injury as a result of the allegedly illegal conduct of the defendant. *Gladstone*, 441 U.S. at 98. Article III also requires the litigants to establish that there is a causal connection between the litigant's injury and the defendant's conduct, and that this injury is likely to be redressed should the court grant the relief requested. *Allen*, 468 U.S. at 751.

In the instant case, plaintiffs allege injuries to their organizational and programmatic interests. These alleged injuries stem from the defendant's failure to investigate the presence of forced child labor in Cote d'Ivoire's cocoa industry. As part of their complaint, plaintiffs claim that their reporting and monitoring requirements, and their interests in proposing legislation and policy initiatives were adversely affected. In effect, plaintiffs seek informational standing, claiming that defendant's failure to conduct its required investigation left them without information vital to their organizational purposes. Despite defendant's inaction, however, plaintiffs fail to satisfy the Article III minima of redressable injury-in-fact necessary to establish constitutional standing.

Plaintiffs rely on the regulations promulgated pursuant to section 307 to support their claim of injury-in-fact. These requirements, found in Customs' own regulations, state the following:

> Upon the receipt by the commissioner of Customs of any communication submitted pursuant to paragraph (a) or (b) of this section [alleging forced labor] and found to comply with the requirements of the pertinent paragraph, the Commissioner will cause such investigation to be made as appears to be warranted by the circumstances of the case and the Commissioner or his designated representative will consider any representations offered by foreign interests, importers, domestic producers, or other interested persons.

19 C.F.R. § 12.24 (2004). Thus, plaintiffs argue, because Customs failed to initiate an

investigation into child slavery practices in Cote d'Ivoire, they themselves were forced to expend

resources to obtain this information in order to fulfill their organizational objectives.

Where a statute explicitly denies relief on the undisputed facts presented in a case,

however, a party's claim cannot lie under the regulations promulgated pursuant to the statute.

*See Alexander v. Sandoval*, 532 U.S. 275, 285-286 (2001) (citing *Central Bank of Denver, N. A.*

*v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173, (1994) (a "private plaintiff may not

bring a [suit based on a regulation] against a defendant for acts not prohibited by the text of [the

statute]")). Section 307 of the Tariff Act states that:

> [a]ll goods, wares, articles and merchandise mined, produced, or manufactured
> wholly or in part in any foreign country by convict labor and/or forced labor
> and/or indentured labor under penal sanctions shall not be entitled to entry at any
> of the ports of the United States, and the importation thereof is hereby prohibited,
> and the Secretary of the Treasury is authorized and directed to prescribe such
> regulations as may be necessary for the enforcement of this provision. . . . *but in*
> *no case shall such provisions be applicable to goods, wares, articles, or*
> *merchandise so mined, produced, or manufactured which are not mined,*
> *produced, or manufactured in such quantities in the United States as to meet the*
> *consumptive demands of the United States.*

19 U.S.C. § 1307 (emphasis added). This domestic consumptive demand exception provided for

in the latter half of the provision is crucial given the facts of this case. The parties agree that no

domestic cocoa production industry exists in the United States sufficient to meet domestic

consumptive demand.[4] In such instances, the statute expressly prohibits application of *any* of the

---

[4] At oral argument, counsel for defendant-intervenor Chocolate Manufacturers
Association, clarified that there are "minuscule" amounts of cocoa grown in the United States,
namely in Hawaii. Nevertheless, all parties agree that the United States' considerable demand
for cocoa cannot be satisfied without imports.

provisions found within it. As a result, the regulations promulgated pursuant to the statute, which merely direct how Customs will implement the directives of the statute, can neither be invoked nor relied upon by plaintiffs in this case. Therefore, any injury relying on 19 C.F.R. § 12.24 cannot be redressed by this court where the consumptive demand exception applies. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (holding that where prayed-for recourse to interagency rule would not redress injury claimed by plaintiffs, burden of proof regarding standing could not be met). In other words, because of the undisputed facts regarding the lack of any significant domestic production of cocoa, section 307 essentially renders itself moot under these facts.

In the first and seminal case brought pursuant to section 307, *McKinney, et. al. v. United States Dep't of the Treasury, et. al.*, 799 F.2d 1544 (Fed. Cir. 1986), this Court and the Federal Circuit considered the constitutional and prudential standing of a group of plaintiffs which included human rights non-governmental organizations who were situated similarly to the plaintiffs in this case. In *McKinney*, plaintiffs sought to exclude from entry into the United States various products mined, produced or manufactured in the Soviet Union, allegedly by convict, forced, or indentured labor. While both this Court and the Federal Circuit ultimately held that the plaintiffs all lacked standing, the Federal Circuit stated in dicta that the case law appeared to support the argument that informational injury – similar to that alleged in the present case – was sufficient to satisfy the injury requirement of Article III. The Federal Circuit then went on to find that the *McKinney* plaintiffs were not within the zone of interest of section 307 – an issue this

court does not reach in the present case.[5]

Plaintiffs argue that two amendments to section 307, which were enacted after *McKinney* was decided by the Federal Circuit, lessen the effect of the domestic consumption exception. Plaintiffs refer to the Sanders and Harkin amendments, named for Representative Bernie Sanders and Senator Tom Harkin, respectively. *See* Pub. L. No. 105-61, § 634, 111 Stat. 1272, 1316 (Oct. 10, 1997); Pub. L. No. 106-200, § 411 (May 18, 2000). Plaintiffs cite extensively to the legislative history of these two amendments in support of the proposition that they represented a bipartisan effort directing Customs to protect children working in indentured and forced labor overseas.[6] As defendant correctly argues, however, neither amendment as passed addressed, modified, or repealed the consumptive demand exception to section 307. The Sanders Amendment modified the Treasury, Postal Service and General Government Appropriations Act

---

[5] In *McKinney*, there was ostensibly a domestic industry that could satisfy domestic consumption demands for the various goods at issue in that case. Because in the instant case, however, plaintiffs and defendants agree that there is no domestic cocoa production industry, there is no doubt as to the applicability of the domestic consumption exception. Thus, this court need not reach the prudential standing inquiry that was determinative in *McKinney*. 9 CIT 315, 614 F. Supp. 1226, 1239, 1240-41 (1985); 799 F.2d at 1557.

[6] The court notes that the record in this case included ample evidence that Customs took this direction seriously. It issued several advisories to importers on the issue of forced child labor and spent considerable agency resources on educational efforts which included strong warnings against the importation of products produced by means of such forced labor. One such publication stated "[a]busive child labor is one of the most serious worker and human rights issues facing the world trading community." U.S. Customs Service Advisory on International Child Labor Enforcement, at 5. Because of this record, the court attempted to broker a settlement between these parties reminding them of how much agreement there seemed to be on the core issue – the need to eliminate abusive child labor. Regrettably, the government defendants were unwilling to consider any suggestions toward settlement, representing to the court at the conference held in chambers on August 1, 2005 that agency priorities had changed after September, 11, 2001.

for Fiscal Year 1998, as well as subsequent appropriations bills, in order to ensure that government funds will not be used for the importation of forced or indentured child labor, as determined by section 307. Specifically, the Sanders Amendment provides the following.

> None of the funds made available in this Act for the United States Customs Service may be used to allow the importation into the United States of any good, ware, article or merchandise mined, produced, or manufactured by forced or indentured child labor, as determined pursuant to Section 307 of the Tariff Act of 1930 (19 U.S.C. § 1307).

Pub. L. No. 105-61, § 634, 111 Stat. 1272, 1316 (Oct. 10, 1997). The Harkin Amendment clarified that references to "forced labor" and "child labor" in section 307 include "forced or indentured child labor." Unfortunately for plaintiffs, however, neither Amendment altered the fact that section 307 subordinates human rights concerns to the availability of the goods at issue by means of domestic production.[7]

Plaintiffs also argue that Customs has not uniformly applied the domestic consumption exception in other section 307 cases, and that imports from other countries which are not derived from forced labor should be considered as substitutes for domestic production in cases such as this. Plaintiffs first cite to Customs' action regarding the detention of bidi cigarettes from India, which were found to be produced by indentured child labor, even though there was no domestic production of bidi cigarettes. *Pl's Memo in Opp to Def's Mot. to Dismiss*, at 31, n.29 (citing Sen. Rep. 106-500, 2000 WL 1517014 (June 2000)). As defendant correctly responds, however,

---

[7] As defendant points out, efforts to excise the domestic production exception from the text of the statute have repeatedly proven unsuccessful. *See, e.g.*, S.1684, 145 Cong. Rec. S11879 (Oct. 4, 1999), *available at* 1999 WL 785710; Amendment No. 2371; 145 Cong. Rec. S13431, S13449 (Oct. 28, 1999), *available at* 1999 WL 979384; Amendment No. 2502; Cong. Rec. S13693, S13716 (Nov. 2, 1999), *available at* 1999 WL 992619.

Customs found a reasonable substitute produced domestically in sufficient quantities to satisfy domestic demand. *Def's Reply in Support of Mot. to Dismiss*, at 14 (citing *China Diesel Imports, Inc. v. United States*, 18 CIT 515, 870 F. Supp. at 351, n.8 (1994) ("merchandise need not be identical or even nearly so, but merely a substitute that would generally be acceptable to the purchaser")).  In the case at hand, no reasonable domestic substitute has been identified.

Lastly, plaintiffs argue that voluntary non-domestic production of cocoa is available, and should be counted towards the consumptive demand requirement.  This argument is also unavailing.  The statutory language is clear in that it requires goods which are "mined, produced, or manufactured in such quantities in the United States as to meet the consumptive demands of the United States" in order for the exception not to apply.  19 U.S.C. §1307.  For the court to read the availability of imports into this clear language would be an impermissible expansion of the statutory text.

Because plaintiffs have not established a redressable injury-in-fact, they cannot satisfy the requirements of Article III standing.  Thus, the court need discuss neither prudential standing nor the timeliness of the instant action.  Accordingly, it is hereby

ORDERED that this action is dismissed for lack of standing.


August 29, 2005                                                /s/ Judith M. Barzilay
_____                      _____
New York, NY                                                  Judith M. Barzilay, Judge