Slip Op. 08-112

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                  :
                                  :
CANADIAN WHEAT BOARD              :
and the GOVERNMENT OF CANADA,     :
                                  :
          Plaintiffs,             :
                                  : Before: Richard K. Eaton, Judge
      and                         :
                                  : Consol. Court No. 07-00058
GOVERNMENT OF ALBERTA,            :
GOVERNMENT OF ONTARIO, and        :
GOVERNMENT OF SASKATCHEWAN,       :
                                  :
     Plaintiff-Intervenors,       :
                                  :
      v.                          :
                                  :
UNITED STATES and the UNITED      :
STATES DEPARTMENT OF COMMERCE,    :
                                  :
          Defendants.             :
                                  :
```

OPINION

[Defendant's motion to dismiss denied in part and granted in part; plaintiff Canadian Wheat Board's motion for summary judgment granted.]

Dated: October 20, 2008

*Steptoe & Johnson LLP* (*Mark A. Moran*, *Jamie B. Beaber*, and *Matthew S. Yeo*), for plaintiff Canadian Wheat Board.

*Weil, Gotshal & Manges LLP* (*M. Jean Anderson, J. Sloane Strickler, John M. Ryan*, and *Peter J.S. Kaldes),* and *Wilmer Cutler Pickering Hale and Dorr LLP* (*Danielle G. Spinelli, Mark C. Fleming, Randolph D. Moss,* and *Seth P. Waxman*), for plaintiff Government of Canada.

*Arnold & Porter LLP* (*Lawrence A. Schneider* and *Francis Anthony Franze-Nakamura*), for plaintiff-intervenor Government of Alberta.

*Hogan & Hartson LLP* (*Mark S. McConnell, H. Deen Kaplan, Jonathon T. Stoel*), for plaintiff-intervenor Government of Ontario.

*Cameron & Hornbostel LLP* (*Michele Sherman Davenport*), for plaintiff-intervenor Government of Saskatchewan.

*Gregory G. Katsas*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Scott D. McBride*), of counsel, for defendants.

Eaton, Judge:  This matter is before the court on the motions of plaintiffs Canadian Wheat Board ("CWB") and the Governments of Canada[1] (collectively, "plaintiffs") for summary judgment pursuant to USCIT Rule 56(c) and the motion of defendant the United States to dismiss plaintiffs' case pursuant to USCIT Rules 12(b)(1) and 12(b)(5).

In bringing this action, plaintiffs seek to compel the liquidation, without the imposition of unfair trade duties, of certain entries of hard red spring ("HRS") wheat imported into the United States from Canada.  Specifically, plaintiffs contend

---

[1]  Plaintiff the Federal Government of Canada originally filed a separate suit under Court No. 07-00059.  That action was consolidated with this action under Consol. Court No. 07-00058. Prior to consolidation, the Federal Government of Canada filed a consent motion to intervene in Court No. 07-00058, as did the Governments of Saskatchewan, Alberta, and Ontario.  Each was granted plaintiff-intervenor status in Consol. Court No. 07-00058.  Separate summary judgment motions were filed by CWB and the Federal Government of Canada, jointly with the three Provincial Governments.  For purposes of convenience, the court refers to all of these parties collectively as "plaintiffs," unless otherwise indicated.  When referring to the various Governments of Canada, the court will, when necessary, distinguish between the Canadian Federal and the Provincial Governments.

that, because the order imposing the antidumping and countervailing duties affecting CWB's merchandise has been invalidated, all of its unliquidated entries should be liquidated without the imposition of either antidumping or countervailing duties. *See* Memo. Pl. CWB Supp. Mot. Summ. J. and Opp. Def.'s Mot. to Dismiss ("CWB Br.") 1-4; Memo. Supp. Mot. Pl. Gov't Canada and Pl.-Ints. Canadian Provincial Gov'ts Summ. J. and Resp. Def.'s Mot. to Dismiss ("Can. Br.") 1-3; *see also* HRS Wheat From Canada, 68 Fed. Reg. 60,641 (Dep't of Commerce Oct. 23, 2003) (notice of antidumping duty order); HRS Wheat From Canada, 68 Fed. Reg. 60,642 (Dep't of Commerce Oct. 23, 2003) (notice of countervailing duty order) (collectively, the "AD/CVD Orders").

Plaintiffs' challenge is to the United States Department of Commerce's ("Commerce" or the "Department") conclusion that CWB's duty deposits should not be refunded in their entirety, despite the revocation of the order under which they were imposed. This legal conclusion was contained in the Department's notice of revocation of the AD/CVD Orders, which was published following a negative injury determination of the United States International Trade Commission ("ITC" or the "Commission"). *See* Antidumping Duty Investigation and Countervailing Duty Investigation of HRS Wheat from Canada, 71 Fed. Reg. 8,275 (Dep't of Commerce Feb. 16, 2006) (Notice of Panel Decision, Revocation of Countervailing and Antidumping Duty Orders and Termination of

Suspension of Liquidation) (the "Notice of Revocation").

For plaintiffs, Commerce committed legal error by not providing for the return of all duty deposits for CWB's entries, the liquidation of which had been suspended, made while the now invalid AD/CVD Orders were in place. Plaintiffs claim that their position is supported by this Court's decision in *Tembec, Inc. v. United States*, 30 CIT __, 461 F. Supp. 2d 1355 (2006) ("*Tembec II*"), *judgment vacated by Tembec, Inc. v. United States*, 31 CIT __, 475 F. Supp. 2d 1393 (2007) ("*Tembec III*").[2] Defendant the United States' motion, on behalf of Commerce, seeks dismissal of this action on the grounds that the court does not have the authority to hear plaintiffs' claims. *See generally* Def.'s Mot. to Dismiss ("Def.'s Br.").

For the reasons that follow, the court dismisses the Governments of Canada from this case for lack of standing, denies the Governments of Canada's motion for summary judgment, and grants CWB's motion for summary judgment.

BACKGROUND

Plaintiff CWB is an exporter of Canadian HRS wheat. In September 2002, the domestic wheat industry petitioned both

_____

[2] The *Tembec III* Court vacated as moot its prior judgment in *Tembec II*, but, having found "that the issues in *Tembec II* were decided within the context of a live controversy," kept the *Tembec II* decision in place. *Tembec III*, 31 CIT at __, 475 F. Supp. 2d at 1402-03.

Commerce and the ITC seeking investigations into possible dumping and subsidization of Canadian HRS wheat, and into the effect of Canadian wheat imports on the United States market. Thereafter, following an investigation, Commerce published its determination that Canadian HRS wheat was both subsidized and being sold in the United States at less than fair value. *See* Certain Durum Wheat and HRS Wheat from Canada, 68 Fed. Reg. 52,747 (Dep't of Commerce Sept. 5, 2003) (final affirmative countervailing duty determinations); Certain Durum Wheat and HRS Wheat from Canada, 68 Fed. Reg. 52,741 (Dep't of Commerce Sept. 5, 2003) (notice of final determinations of sales at less than fair value).

In October 2003, after conducting its own investigation, the ITC determined that imports of Canadian HRS wheat were materially injuring the domestic industry. *See* Durum and HRS Wheat from Canada, USITC Pub. 3639, Inv. Nos. 701-TA-430A and 430B and 731-TA-1019A and 1019B (Oct. 2003) (Final). This, however, did not end the matter, for CWB challenged the ITC's affirmative determination before a North American Free Trade Agreement ("NAFTA") panel. The panel found that the ITC's affirmative material injury determination was unsupported by substantial evidence and remanded the case to the Commission for further consideration. *See* HRS Wheat from Canada, USA-CDA-2003-1904-06 (panel decision) at 64 (June 7, 2005). On remand, the ITC reversed its original affirmative determination and concluded

"that an industry in the United States is not materially injured, or threatened with material injury, by reason of imports of [HRS] wheat from Canada found to be subsidized and sold in the United States at less than fair value."  HRS Wheat from Canada, USITC Pub. 3806, Inv. Nos. 701-TA-430B and 731-TA-1019B (Oct. 2005) (Remand).

The domestic wheat industry then challenged the ITC's negative determination before the NAFTA panel.  The domestic industry did not prevail, however, and in December 2005 the panel sustained the ITC's negative determination and ordered the United States NAFTA Secretary to issue a Notice of Final Panel Action. That notice was issued on December 23, 2005.  *See* HRS Wheat from Canada, USA-CDA-2003-1904-06 (panel decision on remand determination) at 5, 21–22 (Dec. 12, 2005).

On January 30, 2006, the United States NAFTA Secretary published in the Federal Register a Notice of Completion of Panel Review, which by its terms was effective as of January 24, 2006. *See* Article 1904 NAFTA Panel Reviews; Completion of Panel Review, 71 Fed. Reg. 4,896 (Dep't of Commerce Jan. 30, 2006) (notice).

On January 31, 2006, pursuant to 19 U.S.C. § 1516a(g)(5)(B), Commerce published in the Federal Register notice that the NAFTA panel's final decision was not in harmony with the ITC's original affirmative injury determination.  *See* HRS Wheat from Canada: NAFTA Panel Decision, 71 Fed. Reg. 5,050 (Dep't of Commerce Jan.

31, 2006) (the "*Timken* Notice"); *see also Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990). This notice had an effective date of January 2, 2006,[3] and stated that it "serve[d] to suspend liquidation of entries of subject merchandise entered, or withdrawn from warehouse, for consumption on or after January 2, 2006, i.e., ten days from the issuance of the Notice of Final Panel Action, at the current cash deposit rate." *Timken* Notice, 71 Fed. Reg. at 5,051. Thus, the notice preserved from liquidation those entries made on or after January 2, 2006, but did nothing to prevent liquidation of earlier entries.

On February 16, 2006, the Department published the Notice of Revocation, which "revok[ed] the countervailing duty order and antidumping duty order on [HRS] wheat from Canada . . . ." Notice of Revocation, 71 Fed. Reg. at 8,275. Although, as shall be seen, the notice itself appears to indicate otherwise, defendant insists that the Notice of Revocation did not affect the liquidation of entries made prior to January 2, 2006. *See* Def.'s Br. 10.

---

[3] In *Timken Co. v. United States*, 893 F.2d 337, 340 (Fed. Cir. 1990), the Court of Appeals for the Federal Circuit held that 19 U.S.C. § 1516a(c)(1) required Commerce to "publish notice of a . . . decision not in harmony [with the original determination] within 10 days of the issuance of the decision . . . ." This requirement is equally applicable to NAFTA panel decisions not in harmony with the original challenged determination. *See* 19 U.S.C. § 1516a(g)(5)(B). Thus, even though the *Timken* Notice was published later than 10 days after the NAFTA panel decision, it obtained legal effect on January 2, 2006, the last day the notice could lawfully be published.

Plaintiff CWB's entries were made in September 2004. At the time they were entered, CWB's goods were subject to the duties imposed by the then-existing AD/CVD Orders. As a result, CWB paid cash deposits based on the 5.29 percent net subsidy rate and 8.86 percent antidumping duty margin.[4] Liquidation of these entries was suspended on October 31, 2005, when CWB filed a request for administrative review of the AD/CVD Orders. *See Canadian Wheat Bd. v. United States*, 31 CIT __, __, 491 F. Supp. 2d 1234, 1239 (2007) (citations omitted).

On February 21, 2007, plaintiffs CWB and the Federal Government of Canada commenced actions (since consolidated) in this Court, challenging Commerce's failure to make the revocation of the AD/CVD Orders effective *ab initio* and refund all paid cash deposits. Thereafter, on February 26, 2007, CWB withdrew its request for administrative review. That same day, CWB moved to restrain temporarily and enjoin preliminarily the liquidation of its merchandise to allow it to litigate the merits of its case. *Id.* at __, 491 F. Supp. 2d at 1239.

On February 28, 2007, the court granted CWB's motion for a temporary restraining order. *See id.* at __, 491 F. Supp. 2d at

---

[4] According to Customs' fiscal year 2004 annual report, as of October 1, 2004, $176,171.37 in cash deposits had been paid on CWB's entries of Canadian HRS wheat. This amount includes any cash deposits paid by CWB on its September 2004 entries. *See Canadian Wheat Bd. v. United States*, 31 CIT __, __, 491 F. Supp. 2d 1234, 1239 n.5 (2007) (citation omitted).

1248.  On May 2, 2007, the court enjoined the liquidation of CWB's entries pending the final and conclusive decision in this action.  *See Canadian Wheat Bd. v. United States*, Consol. Court No. 07-00058, May 2, 2007 (order).

## STANDARD OF REVIEW

Defendant's jurisdictional challenge to plaintiffs' action raises a "threshold inquiry."  *See Hartford Fire Ins. Co. v. United States*, 31 CIT __, __, 507 F. Supp. 2d 1331, 1334-35 (2007) (citations omitted).  When the Court's jurisdiction is disputed under USCIT Rule 12(b)(1), plaintiffs bear the burden of proving jurisdiction by a preponderance of the evidence.  *See Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002).  The court must therefore make an initial determination that jurisdiction exists.

In evaluating defendant's Rule 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, a Court generally accepts as true the facts as alleged in the pleadings and must view the facts in the light most favorable to plaintiffs.  *See United States v. Ford Motor Co.*, 497 F.3d 1331, 1336 (Fed. Cir. 2007).  Motions to dismiss for failure to state a claim, however, are "the only [Rule 12 motions] . . . [where] a court may treat a motion to dismiss as a summary judgment motion."  *Toxgon Corp.*, 312 F.3d at 1383 (citation omitted).

Accordingly, as the facts are not in dispute and only legal issues are contested, the court treats defendant's Rule 12(b)(5) motion as a motion for summary judgment. *See* USCIT Rule 1 (directing that the rules of this Court "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

Assuming plaintiffs establish jurisdiction under 28 U.S.C. § 1581(i),[5] summary judgment is proper with respect to their substantive claims if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c). "Once it is clear there are no material facts in dispute, a case is proper for summary adjudication." *AMKO Int'l, Inc. v. United States*, 22 CIT 1094, 1096, 33 F. Supp. 2d 1104, 1107 (1998). As plaintiffs' case hinges on pure questions of law, resolution by summary judgment is appropriate. Furthermore, the court must apply the standard of review set forth in 5 U.S.C. § 706 (i.e., the APA) to an action instituted pursuant to 28 U.S.C. § 1581(i). *See, e.g.*, Miami *Free Zone Corp. v. Foreign-Trade Zones Bd.*, 136 F.3d 1310, 1312-1313 (Fed. Cir. 1998). Accordingly, "[t]o the extent

---

[5] Section 1581(i)(4) grants this Court exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section." 28 U.S.C. § 1581(i)(4).

necessary to decision and when presented," the court shall, in pertinent part, "decide all relevant questions of law;" "interpret constitutional and statutory provisions;" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." *See generally* 5 U.S.C. § 706.

DISCUSSION

I. Jurisdiction

The court will first consider whether it has the statutory and constitutional power to hear plaintiffs' case by addressing two issues. First, the court will examine plaintiffs' statutory right to bring suit in this Court under 28 U.S.C. § 1581. Second, it will determine if the Governments of Canada have standing under Article III of the United States Constitution. "In the absence of Article III standing, a court lacks jurisdiction." *Samsung Elecs. Co. v. Rambus, Inc.*, 523 F.3d 1374, 1378 (Fed. Cir. 2008) (citation omitted).

A. Subject Matter Jurisdiction

Plaintiffs claim that the court may hear this case under this Court's residual provision of jurisdiction set forth in 28 U.S.C. § 1581(i). *See* CWB Br. 8; Can. Br. 7. The important

caveat to finding jurisdiction under this provision is that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (citations omitted).  In keeping with this caveat, the court must address defendant's contention that plaintiffs are precluded from litigating this action under 28 U.S.C. § 1581(i)(4) because jurisdiction to hear their claims was available under 28 U.S.C. § 1581(c).  That subsection grants this Court exclusive jurisdiction over final reviewable determinations listed in 19 U.S.C. § 1516a (governing judicial review of countervailing duty and antidumping duty administrative proceedings).

1.   Notice of Revocation and Reviewability Pursuant to
     19 U.S.C. § 1516a

Defendant claims that the Notice of Revocation constitutes a reviewable determination under 19 U.S.C. § 1516a and thus judicial review was available pursuant to 28 U.S.C. § 1581(c). For their part, plaintiffs insist that the Notice of Revocation does not contain a reviewable final determination under 19 U.S.C. § 1516a and thus its review lies outside the Court's 28 U.S.C.

§ 1581(c) jurisdiction.[6]  While plaintiffs acknowledge that the Notice of Revocation contains a legal conclusion, they maintain that the notice did not announce a final determination within the meaning of 19 U.S.C. § 1516a.  *See* Can. Br. 14-18.

In making their arguments, plaintiffs state that they "seek to correct Commerce's unlawful failure to implement the ITC's negative remand determination, which, once affirmed by the binational panel, necessarily required Commerce to revoke the AD/CVD orders that now had no legal basis . . . ."  Reply Pl. Gov't Canada and Pl.-Ints. Canadian Provincial Gov'ts ("Can. Reply Br.") 8.  Further, plaintiffs assert that, because the Notice of Revocation reflects Commerce's administration and enforcement of the antidumping and countervailing duty laws, its review falls squarely within this Court's 28 U.S.C. § 1581(i)(4) jurisdiction.  *See* Can. Br. 11-14 (stating that Commerce's "actions or failures to act [by not revoking the AD/CVD Orders *ab initio* and not refunding paid cash deposits] are quintessentially

---

[6]  For defendant, the Notice of Revocation falls within the terms of 19 U.S.C. § 1516a(a)(2)(B)(i), which provides for judicial review of:

> [f]inal affirmative determinations by the administering authority and by the Commission under section 1671d [final determinations regarding countervailable subsidies] or 1673d [final determinations regarding sales at less than fair value] of this title, including any negative part of such a determination . . . .

19 U.S.C. § 1516a(a)(2)(B)(i); *see also* Def.'s Br. 5.

a part of Commerce's administration and enforcement of the AD/CVD laws").

As noted, defendant's primary objection to plaintiffs' assertion of § 1581(i) jurisdiction is that the "[p]laintiffs could have challenged the <u>Notice of Revocation</u> under 28 U.S.C. § 1581(c) . . . ." Def.'s Br. 4. Underlying defendant's position is its contention that the Notice of Revocation is a reviewable determination under 19 U.S.C. § 1516a(a)(2)(B)(i), and therefore judicial review of the notice was available at the time of its issuance. *See* Def.'s Br. 5. Thus, defendant asserts that the exercise of jurisdiction under 28 U.S.C. § 1581(i) is prohibited because plaintiffs could have obtained the same remedy they now seek had they proceeded earlier under 28 U.S.C. § 1581(c). *See* Def.'s Br. 4-5 (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)).

Specifically, defendant states that, in issuing the Notice of Revocation:

> . . . Commerce reapplied the antidumping duty statutes with respect to the issuance of antidumping duty orders and concluded that the orders should be revoked only prospectively. In essence, Commerce amended its determinations in the investigations, which pursuant to [*Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985)],[7] were reviewable pursuant to 19

---

[7] As support for its position, defendant relies on the Federal Circuit's decision in *Freeport Minerals Co. v. United*
(continued...)

U.S.C. § 1516a and 28 U.S.C. § 1581(c).

Def.'s Br. 7.

In keeping with this argument, defendant further asserts that plaintiffs untimely commenced their action.  Def.'s Br. 5. According to defendant:

> Plaintiffs are impermissibly attempting [to] bring claims that they could have brought pursuant to 28 U.S.C. § 1581(c) [more than a year ago], when the Notice of Revocation was issued.  Such claims are untimely pursuant to 19 U.S.C. § 1516a(a)(2)(A), and plaintiffs may not circumvent that statutory bar by

---

[7](...continued)
*States*, 758 F.2d 629 (Fed. Cir. 1985) ("*Freeport Minerals*"). Although it recognizes that in granting CWB's motion for a preliminary injunction this court held that *Freeport Minerals* "was not controlling here," defendant insists that the case is binding precedent because both it and this case "involve challenges to notices of revocation that were issued in response to final remand determinations that were sustained by a NAFTA panel and this Court respectively."  *See* Def.'s Br. 7-8.

The court again finds defendant's reliance on *Freeport Minerals* misplaced.  The controversy here involves a legal conclusion found in the Notice of Revocation, but not contained in Commerce's final determination.  In *Freeport Minerals*, on the other hand, the revocation notice did not state any new legal conclusions, but merely announced the results of a final determination.  Such final determinations are indeed reviewable under 19 U.S.C. § 1516a.  As in *Tembec, Inc. v. United States*, 30 CIT __, __, 441 F. Supp. 2d 1302, 1316 n.19 (2006) ("*Tembec I*"), defendant misstates the matter to be reviewed.  Here, the matter is the validity of the administration and enforcement of a final determination, not the validity of the final determination itself.  *See id*. at __, 441 F. Supp. 2d at 1318 ("Plaintiffs have brought a challenge to the administration and enforcement of a determination, not to the validity of the determination itself. Consequently, the availability of a remedy under § 1581(c) as to the underlying determination does not bar suit under § 1581(i).").  Thus, the court again finds that the teaching of *Freeport Minerals* does not apply.

attempting to invoke the Court's jurisdiction pursuant to section 1581(i).

Def.'s Br. 5.[8]  Thus, defendant insists that, because plaintiffs waited more than a year from the publication of the Notice of Revocation to sue, their claims are barred by the statute of limitations applicable to determinations reviewable under 19 U.S.C. § 1516a.  *See* Def.'s Br. 5.

The court finds that the Notice of Revocation was not a reviewable final determination under 19 U.S.C. § 1516a and, as a result, plaintiffs had no remedy available to them under 28 U.S.C. § 1581(c).  First, while the Department may have had

---

[8]  Pursuant to 19 U.S.C. § 1516a(a)(2)(A):

> Within thirty days after--
>
>> (i) the date of publication in the Federal Register of . . .
>>
>>> (II) an antidumping or countervailing duty order based upon any determination described in clause (i) of subparagraph (B) . . .
>
> an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint, each with the content and in the form, manner, and style prescribed by the rules of that court, contesting any factual findings or legal conclusions upon which the determination is based.

19 U.S.C. § 1516a(a)(2)(A).

internal discussions regarding the contents of the Notice of Revocation, its legal conclusion that the revocation of the orders should be prospective only, was reached without notice, public hearings or briefing by the parties, and was outside of the reviewable determinations found in 19 U.S.C. § 1516a. In other words, the Notice of Revocation "was *not* made during any proceeding that would culminate in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)." *Ceramica Regiomontana, S.A. v. United States*, 5 CIT 23, 26, 557 F. Supp. 596, 600 (1983) (emphasis in original); *see also Consol. Fibers, Inc. v. United States*, 30 CIT __, __, 465 F. Supp. 2d 1338, 1341 (2006) (finding no jurisdiction under 28 U.S.C. § 1581(c) to hear plaintiff's claim challenging ITC's denial of their request for reconsideration of ITC final determination and stating that "[h]ad the Commission commenced a reconsideration proceeding, then the resulting reconsideration determination would have been reviewable under 28 U.S.C. § 1581(c). . .."). Furthermore, the statutory provisions for antidumping duty and countervailing duty investigations (as distinct from those for reviews) do not contain provisions for revocation of unfair trade orders, let alone a statutory directive to determine the effective date of the revocation. *See* 19 U.S.C. §§ 1671, 1673; *see also Parkdale Int'l Ltd. v. United States*, 32 CIT __, __, Slip Op. 08-111 at 17-18 (Oct. 20, 2008).

Morever, the court finds without merit defendant's contention that Commerce "reapplied the antidumping statutes with respect to the issuance of antidumping duty orders and concluded that the orders should be revoked only prospectively," thus making the Notice of Revocation a final determination reviewable under § 1516a. Def.'s Br. 7. In making this argument, defendant claims that, because Commerce revoked the AD/CVD Orders for all entries made on or after January 2, 2006, and reaffirmed the orders' application to all other entries, it "amended its determinations in the investigations" and therefore the Notice of Revocation is a reviewable determination as defined by 19 U.S.C. § 1516a(a)(2)(B)(i). *See* Def.'s Br. 5-7.

Under 19 U.S.C. § 1516a(a)(2)(B), this Court may review final affirmative and negative determinations made by Commerce regarding countervailable subsidies or sales at less than fair value. *See* 19 U.S.C. § 1516a(a)(2)(B). Here, defendant is essentially claiming that the Notice of Revocation was a final affirmative determination to the extent that it reasserted the legal effect of the affirmative determinations in the AD/CVD Orders with respect to entries made prior to January 2, 2006, and was a negative determination with respect to subject entries made after that date. In other words, defendant claims that the Notice of Revocation contains both a final affirmative and a final negative determination.

Defendant's contentions are impossible to credit.  In *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006), the Federal Circuit instructed this Court to "look to the true nature of [an] action." (internal quotations and citation omitted).  Here, the true nature of plaintiffs' case can be seen by examining what it is not.  That is, it is not a case "contesting any factual findings or legal conclusions" contained in the final determinations of either the ITC or Commerce following their investigations.  19 U.S.C. § 1516a(a)(1). Indeed, these determinations contained findings and conclusions of the sort one would expect: (1) for Commerce, relating to subsidization and dumping, and (2) for the ITC, relating to injury.  The Notice of Revocation touched on none of these matters.  It contained no factual findings, and its only legal conclusions related to the date of revocation.

Moreover, as the prevailing parties, plaintiffs had no dispute with the ITC's final negative determination that resulted in the Notice of Revocation, and thus had no reason to appeal that determination.  That being the case, the teaching of *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) ("*Consolidated Bearings*"), is useful.

In *Consolidated Bearings*, an importer challenged Commerce's liquidation instructions to Customs, seeking to compel the application of the antidumping duty rates from the Department's

final determination to their merchandise.  The Federal Circuit confirmed jurisdiction under 28 U.S.C. § 1581(i) after finding that "Consolidated [did] not object to the final results.  Rather Consolidated [sought] application of those final results to its entries . . . ."  *Consol. Bearings*, 348 F.3d at 1002.  The Federal Circuit based its holding on its conclusion that the plaintiff's "case involve[d] a challenge to [Commerce's] 1998 instructions, which is not an action defined under [19 U.S.C. § 1516a]."  *Id.*  The *Consolidated Bearings* Court further found that "[b]ecause Consolidated [was] not challenging the final results, [28 U.S.C. § 1581(c)] is not and could not have been a source of jurisdiction for this case."  *Id.*  After concluding that jurisdiction did not lie pursuant to § 1581(c), the Federal Circuit held the case to be "squarely within the provisions of subsection (i)."  *Id.*  Specifically, the Court observed that "Commerce's liquidation instructions direct Customs to implement the final results of administrative reviews.  Consequently, an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results."  *Id.*

Likewise, the Federal Circuit found in *Shinyei Corporation of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), that Commerce's liquidation instructions were reviewable under 28 U.S.C. § 1581(i)(4):

> As we have recently held, a challenge to
> Commerce instructions on the ground that they
> do not correctly implement the published,
> amended administrative review results, "is
> not an action defined under [19 U.S.C.
> § 1516a] of the Tariff Act." [19 U.S.C.
> § 1516a] is limited on its face to the
> judicial review of "determinations" in
> countervailing duty and antidumping duty
> proceedings.

*Id.* at 1309 (quoting *Consol. Bearings*, 348 F.3d at 1002); *see also Shinyei Corp. of Am. v. United States*, 524 F.3d 1274, 1277 (2008) ("If an importer believes that the liquidation instructions issued by Commerce to Customs do not correctly reflect the final determination, the importer may challenge those instructions in the Court of International Trade under the [APA] . . . .").

Finally, the recent case of *American Signature, Inc. v. United States*, No. 2007-1216 (Fed. Cir. Nov. 30, 2007) (not reported in the Federal Reporter), *available at* 2007 WL 4224210 ("*American Signature*"), is persuasive. That case involved an antidumping investigation in which Commerce amended the dumping margin several times during the course of its investigation. Each time the dumping margin was changed, Commerce instructed that the deposit rates be changed. *See id.* at *1-2.

Following the issuance of its final results, Commerce issued liquidation instructions directing "Customs to assess duties at the cash deposit rates in effect at the time of entry." *Id.*

> As a result, for entries between the date of the preliminary determination and the amended preliminary determination, and for entries between the date of the final determination and the amended final determination, duties were assessed at the cash deposit rates erroneously calculated by Commerce. In short, although Commerce admitted errors in its calculated dumping margins, it did not correct for the overpayment of cash deposits when it issued liquidation instructions.

*Id.* at 2-3. The plaintiff in *American Signature* sued to have Commerce's liquidation instructions "retroactively apply the reduced margin rates . . . ." *Id.*

As in this case, the government argued that "the true nature of [the plaintiff's] claim is a challenge to Commerce's underlying final determination, not the liquidation instructions . . . ." *Id.* at *2. "According to the government, [the plaintiff's] claim should have been brought under 28 U.S.C. § 1581(c)" and therefore the government maintained that the plaintiff's case was time barred and should be dismissed for lack of jurisdiction. *See id.*

The *American Signature* Court held: "The mere fact that Commerce addressed the implementation of antidumping rates in its final determination does not make the implementation itself a reviewable determination under § 1516(a). The true nature of [plaintiff's] claim remains a challenge to Commerce's liquidation instructions." *Id.* Thus, citing *Consolidated Bearings*, the Federal Circuit found that this Court had jurisdiction to hear

the plaintiff's claim under § 1581(i). *See id.* (citation omitted).

The case law from the Federal Circuit, therefore, confirms that the Notice of Revocation is not a reviewable determination within the meaning of 19 U.S.C. § 1516a and thus plaintiffs' challenge to its contents could not be heard by this Court pursuant to 28 U.S.C. § 1581(c). That is, the publication of the date of revocation is no more part of Commerce's final determination than are its liquidation instructions. Thus, if a legal conclusion, found in liquidation instructions based on Commerce's own final determination, is reviewable under 28 U.S.C. § 1581(i), then a legal conclusion found in the Notice of Revocation resulting from a negative ITC final determination is as well. This is because the "true nature" of plaintiffs' case is a challenge to the administration and enforcement of a final determination——not a challenge to the determination itself.

Accordingly, the court finds that the Notice of Revocation implemented the ITC's final determination that domestic wheat producers were not injured or threatened with injury by imports of Canadian HRS wheat. As a result, although containing a legal conclusion with respect to the prospective application of the revocation, the Notice of Revocation is not a final affirmative determination subject to judicial review under 19 U.S.C. § 1516a(a)(B)(i) and 28 U.S.C. § 1581(c).

## 2. Choice of Forum and its Impact on Jurisdiction

The court now turns to the question of whether plaintiffs' decision to challenge the original ITC affirmative injury determination before a NAFTA panel rather than in this Court precludes jurisdiction here. Defendant asserts that § 1581(i) jurisdiction is unavailable because: (1) plaintiffs could have proceeded in this Court under § 1581(c), and (2) the NAFTA Implementation Act bars enforcement of NAFTA panel decisions in the Court of International Trade. *See* Def.'s Br. 11-12.

First, defendant insists that plaintiffs could "have obtained an adequate remedy by challenging the ITC's original 2003 determination in this Court pursuant to section 1581(c) . . . section 1581(i) jurisdiction is unavailable . . . ." Def.'s Br. 8. Put another way, defendant maintains that, by choosing to appeal the Commission's original affirmative injury determination to a NAFTA panel, plaintiffs are now "foreclosed from seeking relief from the Court, pursuant to 28 U.S.C. § 1581(i), to enforce the NAFTA panel decision or to obtain relief that they might have obtained had they elected to proceed in this Court in the first place." Def.'s Br. 8.

Defendant makes this argument while recognizing that similar reasoning was found wanting by this Court in *Tembec, Inc. v. United States*, 30 CIT __, 441 F. Supp. 2d 1302 (2006) ("*Tembec*

*I*").[9]  The *Tembec I* Court found that plaintiffs' appeal of a final determination to a NAFTA panel did not preclude the exercise of jurisdiction by this Court to hear a separate cause of action challenging to the United States Trade Representative's ("USTR") actions to administer and enforce a separate ITC affirmative injury determination under Section 129 of the Uruguay Round Agreements Act ("Section 129").[10]  That is, although the

_____

[9]  In support of its contention that the *Tembec I* rationale with respect to jurisdiction no longer applies, defendant cites the Federal Circuit's decision in *International Custom Products, Inc. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006) ("*ICP*"). In Commerce's view, the *Tembec I* Court incorrectly focused on the nature of plaintiffs' claims instead of examining the remedies available under the other subsections of section 1581.  Here, Commerce maintains that the Federal Circuit's holding in *ICP* precludes the exercise of jurisdiction under 28 U.S.C. § 1581(i) because "[r]elief was 'otherwise available,' but plaintiffs simply elected not to pursue such relief."  Def.'s Br. 9. Commerce further asserts that here, when determining the propriety of exercising jurisdiction under 28 U.S.C. § 1581(i), the court must, in accordance with *ICP*, "focus upon the remedies available and upon the fact that plaintiffs could have received the same remedy that they seek here, had they originally challenged the ITC's 2003 injury determination," in this court. *See* Def.'s Br. 10-11.

   The court finds nothing in *ICP* requiring it to abandon the reasoning in *Tembec I*.  The *Tembec I* Court found that a party's decision to challenge, before a NAFTA panel, the substance of a final determination made pursuant to § 1516a does not preclude it from contesting the administration and enforcement of a separate Section 129 determination in this Court.  Indeed, as has been previously noted, plaintiffs' challenge is to a legal conclusion found in the Notice of Revocation, which is not a final determination within the meaning of 19 U.S.C. § 1516a.

[10]  The enforcement mechanism at issue was Section 129 of the Uruguay Round Agreements, which has been described as follows:

                                          (continued...)

Section 129 determination itself was subject to judicial review under 28 U.S.C. § 1581(c), plaintiffs' separate cause of action arose under § 1581(i) because it concerned the administration and enforcement of the Section 129 determination, rather than the substance of that determination. *Tembec I*, 30 CIT at __, 441 F. Supp. 2d at 1315-17 ("[T]he availability of a remedy under § 1581(c) as to the underlying determination does not bar suit under § 1581(i).").

The *Tembec I* Court acknowledged the general rule reiterated by the Federal Circuit in *International Custom Products, Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006), that "section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have

---

[10](...continued)
> Section 129 of the Uruguay Round Agreements Act, 19 U.S.C. § 3538 (2006), provides the USTR with mechanisms to respond to adverse WTO panel decisions regarding ITC injury determinations, Commerce duty orders, and the like. It includes the ability to ask the ITC (under § 129(a)(1)) or Commerce, under § 129(b)(1) to decide whether anything can be done compatible with U.S. law to make the subject determination consistent with the WTO panel decision. *Id.* § 3538(a)(1), (b)(2). If so, the USTR may ask the ITC (under § 129(a)(4)) or Commerce (under § 129(b)(2)) to issue a determination to that effect. *Id.* § 3538(a)(4), (b)(2).

Jeanne E. Davidson and Zachary D. Hale, Developments During 2006 Concerning 28 U.S.C. § 1581(i), 39 Geo. J. Int'l. L. 127, 145 n. 108 (2007).

been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Tembec I*, 30 CIT at __, 441 F. Supp. 2d at 1317 (quotations, citations and alteration omitted). Nonetheless, the *Tembec I* Court held that "[t]his constraint does not mean . . . that Plaintiffs must forgo their right to NAFTA panel review of the substance of [an ITC determination] in order to seek review of a completely separate action taken to administer and enforce [a Section 129 determination]." *Id.* at __, 441 F. Supp. 2d at 1317.

In keeping with the holding in *Tembec I*, the court finds that a party may appeal a determination to a NAFTA panel without forfeiting its right to have heard in this Court a separate cause of action concerning the administration and enforcement of agency actions implementing that determination. As noted, the court has found that plaintiffs are not challenging a final determination within the meaning of § 1516a. Therefore, the court holds that plaintiffs' challenge to the ITC's original affirmative injury determination before a NAFTA panel did not oust this Court of jurisdiction to entertain their separate cause of action challenging Commerce's legal conclusion found in the Notice of Revocation under § 1581(i).

In like manner, the court finds without merit defendant's argument that the NAFTA Implementation Act bars enforcement of NAFTA panel decisions in the courts of the United States. *See*

Def.'s Br. 11-12.  According to defendant, plaintiffs cannot elect to present their substantive case to a NAFTA panel but then ask this Court to review the panel's decision.[11]  Def.'s Br. 11. What defendant fails to recognize is that plaintiffs are not seeking a review of the NAFTA panel's decision.  Rather, the "true nature" of plaintiffs' claim is an APA cause of action challenging Commerce's legal conclusion found in the Notice of Revocation.  Thus, plaintiffs are not seeking review of the ITC's action or the NAFTA panel's action (nor would they wish to as the prevailing parties), but rather they challenge Commerce's failure to implement the ITC's negative remand determination.  *See Tembec I*, 30 CIT at __, 411 F. Supp. 2d at 1318 (reasoning that NAFTA Implementation Act provisions are "irrelevant . . . because Plaintiffs' claims do not arise from the NAFTA."); *see also Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1336 (2008), *cert. denied*, 2008 WL 4454382 (U.S. Oct. 6, 2008)

---

[11]  To support this argument, defendant cites to 19 U.S.C. § 1516a(g)(7)(A), which provides:

> Any action taken by the administering authority or the Commission under this paragraph [concerning actions on remand from NAFTA binational panels] shall not be subject to judicial review, and no court of the United States shall have power or jurisdiction to review such action on any question of law or fact by an action in the nature of mandamus or otherwise.

*See* Def.'s Br. 11 (citations omitted).

(No. 07-1470) (noting that election only bars a plaintiff from proceeding "<u>on the same claim</u>" in two different fora) (citation omitted).

Therefore, the court finds that defendant's arguments do not present a bar to jurisdiction over plaintiffs' claim pursuant to 28 U.S.C. § 1581(i)(4).  *See* 28 U.S.C. § 1581(i)(4).

B.    The Governments of Canada Lack Standing Under Article
      III of the Constitution

Having held that this Court has jurisdiction over plaintiffs' claims, the next question is whether the Governments of Canada have standing under Article III of the Constitution. Article III limits the jurisdiction of the federal courts to the resolution of "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1; *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

It is worth noting at the outset that defendant only disputes the standing of the Canadian Federal Government——not the Provincial Governments.[12]  Nevertheless, standing is an essential element of plaintiffs' case, and the court is obligated to ensure that both the Canadian Federal and Provincial Governments have standing.  *See United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to

---

[12]  Defendant likewise does not challenge CWB's standing. Because CWB's entries are at issue here, however, CWB's standing as a proper party to bring suit is apparent.

examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990) (citations omitted)).

The Governments of Canada have the burden of proof on standing because they are the parties seeking to invoke the court's jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Int'l Labor Rights Fund v. United States*, 29 CIT 1050, 1053, 391 F. Supp. 2d 1370, 1373 (2005) ("The question of standing involves the determination of whether a particular litigant is entitled to invoke the jurisdiction of the federal court in order to decide the merits of a dispute or of particular issues.") (citation omitted).

"The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit . . . ."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).  In other words, the question is whether the Governments of Canada have "a direct enough interest" in the case's outcome.  *See* David D. Siegal, New York Practice 1089 (4th ed. 2005).  The Federal Circuit, in *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (2008), *cert. denied*, 2008 WL 4454382 (U.S. Oct. 6, 2008) (No. 07-1470) ("*Canadian Lumber*"), recently set forth the proper Article III standing analysis:

> [T]he irreducible constitutional minimum of

standing contains three elements.  First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical."  Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

(quoting *Lujan*, 504 U.S. at 560-61 (citations omitted and emphasis added)).  *Canadian Lumber* also involved Canadian goods, Canadian producers, and the Canadian Federal Government.  In that case, the Federal Circuit made clear that the Federal Government of Canada must "demonstrate[] an injury-in-fact *independent* of injury to the Canadian Producers . . . ."  *Canadian Lumber*, 517 F.3d at 1338 (emphasis added).  Ultimately, the Federal Circuit found that the Federal Government of Canada did not have standing.  *See id.*

In this case, defendant's primary argument is that "Canada has not plead, nor could it establish standing upon the basis that there is a likelihood of future harm or that a redressable injury would stem[] from liquidation of a Canadian exporter's entries of wheat."  Reply Supp. Def.'s Mot. Dismiss and Resp. Pls.' Mots. ("Def.'s Reply Br.") 17.  The court agrees with defendant and finds that, because the Governments of Canada have

failed to meet the "injury-in-fact" test, they do not have Article III standing in this case.

In reaching this conclusion, the court is mindful of plaintiffs' argument that CWB and the Federal Government of Canada have a close business relationship. *See* Issues and Decision Memorandum for the Final Countervailing Duty Determinations of the Investigations of Certain Durum Wheat and HRS Wheat from Canada (Dep't of Commerce Aug. 28, 2003), *available at* 2003 WL 24153856, at *2-11 (the "I&D Memo"). CWB is a "shared governance" corporation in which five of the fifteen seats on CWB's board of directors are appointed by a federal official. *Id.* In addition, the Federal Government of Canada approves CWB's incurrence of indebtedness, guarantees borrowing by CWB, and guarantees certain credit offered by CWB to wheat purchasers.

What is not present in these arrangements, however, is any clear showing that the Federal Governemnt of Canada would suffer a separate "injury-in-fact" if CWB's deposits were not returned. In other words, the Federal Government of Canada is analogous to a business associate or guarantor who might suffer if its associate or principal does not prosper, but whose stake in a case is not enough to bring suit on its own. *See Russell v. Financial Capital Equities*, 158 Fed. Appx. 953, 955-56 (10th Cir. 2005) (not published in the Federal Reporter) (holding that a

business partner lacked a "concrete and particularized interest" in his partner's acquisition of debt and therefore did not have standing to bring suit claiming that loans made to his partner violated federal law); *Quarles v. City of East Cleveland*, 202 F.3d 269 (table), 1999 WL 1336112 at *4 (6th Cir. 1999) ("[I]n order to obtain standing to assert a claim, a guarantor's injury must not stem from the harm done to the corporation.  Instead, any redressable injury must flow from individualized harm done to the plaintiff, separate from any claims that the corporation may assert."); *Frierdich v. United States*, 985 F.2d 379, 382 (7th Cir. 1993) (holding that a guarantor of a taxpayer's debt had an interest that was too remote to confer standing to challenge a levy on the taxpayer's property and reasoning that a creditor does not have "the kind of stake that has ever been thought to entitle him to act as if he owned the property").  Any injury that the Federal Government of Canada might suffer, therefore, is simply too conjectural to constitute "an injury-in-fact independent of injury to the Canadian Producers," as is required by *Canadian Lumber*.  *See Canadian Lumber*, 517 F.3d at 1338. Thus, the court finds that the Canadian Federal Government has not met the injury-in-fact standard for purposes of Article III standing.

The Governments of Canada, collectively, further allege that Commerce's failure to refund deposits to CWB "reduces

farmers' incomes and results in damage to [both] Canada's and the Provinces' tax revenues and economies." *See* Can. Br. 33. Again, these claims are simply too conjectural and hypothetical to provide Article III standing. The court is aware that cases have suggested otherwise, including this Court's decision in *Tembec I.* *See* 30 CIT at __, 441 F. Supp. 2d at 1313-14 (citing *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1451-52 (10th Cir.1994). *Tembec I*, however, was decided before *Canadian Lumber*, and here, as in that case, the Federal and Provincial Governments of Canada do "not explain what benefit [they have] been deprived of - i.e., what *injury* [they have] suffered." *See Canadian Lumber*, 517 F.3d at 1338; *Clinton v. City of New York*, 524 U.S. 417, 459 (1998) (reasoning that "conjectural or hypothetical injuries do not suffice for Article III standing") (citation omitted).

In order to establish Article III standing, the Governments of Canada would have to establish an injury-in-fact such that they could bring suit on their own——without CWB's involvement. *See Hui Yu v. U.S. Dep't of Homeland Sec.*, 568 F. Supp. 2d 231, 234 (D. Conn. 2008) ("A plaintiff can only assert his own rights.") (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). They have not done so here. *See Bennett v. Spear*, 520 U.S. 154, 166 (1997) (stating that an "injury in fact" for purposes of Article III standing must involve "an invasion of a judicially cognizable interest which is (a) concrete and particularized and

(b) actual or imminent, not conjectural"); *McKinney v. U.S. Dept. of Treasury*, 799 F.2d 1544, 1550 (Fed. Cir. 1986) ("'[A]bstract,' 'conjectural,' or 'hypothetical' injury is insufficient to meet the Article III requirement for injury. . . . Nor is an interest in a problem, no matter how longstanding the interest or how qualified the litigant in matters relating to the problem, sufficient to satisfy the injury requirement.") (quotations and citations omitted).  Thus, while the Governments of Canada have some interest in this case, they "[are] not entitled to special solicitude that would temper the injury-in-fact requirement." *See Canadian Lumber*, 517 F.3d at 1338.

Accordingly, the claims of the Governments of Canada are dismissed for lack of standing.[13]

II.  Prospective Revocation of AD/CVD Orders

Having established jurisdiction, the court turns to the merits of this action.  CWB's substantive case involves the question of whether the United States may lawfully retain cash

---

[13]  Given the court's dismissal of the Governments of Canada's complaints on standing grounds, it need not address defendant's claim that the United States has not waived its sovereign immunity here.  Nevertheless, it is apparent that, jurisdiction having been established under § 1581, sovereign immunity has been waived.  *See Humane Soc'y of the U.S. v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001) ("[Section] 1581 not only states the jurisdictional grant to the Court of International Trade, but also provides a waiver of sovereign immunity over the specified classes of cases.").

deposits paid on its entries of HRS wheat even though the injury

determination underlying the AD/CVD Order has been wholly

invalidated.  The parties agree that the resolution of this issue

hinges on the interpretation and application of 19 U.S.C.

§§ 1516a(g)(5)(B) and (C).  Section 1516a(g)(5)(B) contains the

general rule for the liquidation of pre-*Timken* Notice entries and

provides:

> In the case of a determination for which
> binational panel review is requested pursuant
> to article 1904 of the NAFTA or of the
> Agreement, entries of merchandise covered by
> such determination shall be liquidated in
> accordance with the determination of the
> administering authority or the Commission, if
> they are entered, or withdrawn from
> warehouse, for consumption on or before the
> date of publication in the Federal Register
> by the administering authority of [the
> *Timken*] notice of a final decision of a
> binational panel, or of an extraordinary
> challenge committee, not in harmony with that
> determination.  Such notice of a decision
> shall be published within 10 days of the date
> of the issuance of the panel or committee
> decision.

19 U.S.C. § 1516a(g)(5)(B).  Section 1516a(g)(5)(C), however,

entitled "Suspension of liquidation," contains an exception to

the general rule.  This provision states:

> Notwithstanding the provisions of
> subparagraph (B), in the case of a
> determination described in clause (iii)
> [administrative review] or (vi) [scope
> ruling] of subsection (a)(2)(B) of this
> section for which binational panel review is
> requested pursuant to article 1904 of the
> NAFTA or of the Agreement, the administering

> authority, upon request of an interested
> party who was a party to the proceeding in
> connection with which the matter arises and
> who is a participant in the binational panel
> review, shall order the continued suspension
> of liquidation of those entries of
> merchandise covered by the determination that
> are involved in the review pending the final
> disposition of the review.

19 U.S.C. § 1516a(g)(5)(C)(i).

For defendant, the language of § 1516a(g)(5)(B) applies here and therefore, all of CWB's entries made prior to the publication of the *Timken* Notice are to be liquidated in accordance with the deposit rates found in the AD/CVD Orders, even though the orders have been revoked. *See* Def.'s Reply Br. 19-20. For CWB, the exception found in § 1516a(g)(5)(C) applies and its entries were preserved for liquidation without unfair trade duties following revocation of the AD/CVD Orders. *See* CWB Br. 9-11.

In other words, CWB contends that its request for an administrative review suspended liquidation of its merchandise entered before publication of the *Timken* Notice. As a result, CWB insists that all of its entries, whose liquidation was suspended, must be liquidated at a rate of zero as a result of the revocation of the AD/CVD Orders. Plaintiff relies on *Tembec II* to support this position.

In *Tembec II*, this Court found that 19 U.S.C. § 1516a(g)(5)(B) was inapplicable to pre-*Timken* notice entries when liquidation of those entries had been suspended. The Court

held that, in those circumstances, 19 U.S.C. § 1516a(g)(5)(C) controlled. *See Tembec II*, 30 CIT at __, 461 F. Supp. 2d at 1367 ("Entries, the liquidation of which has been suspended, cannot, then, be liquidated with AD/CV duties under these conditions . . . . Rather, Congress provided for a suspension of liquidation to keep entries available for liquidation in accordance with law."). Therefore, the *Tembec II* Court ordered Commerce to instruct Customs to liquidate plaintiffs' pre-*Timken* notice entries without the imposition of unfair trade duties. *See id.*

The court cannot discern a substantial difference between the legal and factual issues presented in this case and those faced by the Court in *Tembec II*. In each case, (1) the ITC made an affirmative injury determination; (2) after an appeal to a NAFTA panel, the ITC made a negative injury determination; (3) liquidation of contested entries was suspended by request for administrative review; and (4) the AD/CVD orders were revoked. Therefore, the court will follow *Tembec II* and order that all of CWB's entries, whose liquidation has been suspended, be liquidated in accordance with the ITC's final negative determination.

In assessing the parties' arguments, and concluding that the plaintiffs should prevail, the *Tembec II* Court reasoned that the "continued" suspension of liquidation provided for in

§ 1516a(g)(5)(C) "acts as the equivalent of an injunction against liquidation and thus halts liquidation until the suspension expires." *Id.* at __, 461 F. Supp. 2d at 1360. In reaching its conclusion, the *Tembec II* Court examined the legislative history of 19 U.S.C. §§ 1516a(g)(5)(B) and (C). The *Tembec II* panel concluded that the legislative history of these provisions revealed "that they were enacted to achieve the goals of prompt liquidation of uncontested entries and the ultimate liquidation of contested entries in accordance with the final litigation results." *Id.* at __, 461 F. Supp. 2d at 1363. The Court continued: "Viewed in the context of the law as it existed when the subsections were drafted, it becomes apparent that § 1516a(g)(5)(B) operates more narrowly than Defendants argue, and that the operation of § 1516a(g)(5)(C) is necessarily broader." *Id.* at __, 461 F. Supp. 2d at 1363.

*Tembec II* explains that §§ 1516a(g)(5)(B) and (C) "first appeared in the United States-Canada Free-Trade Agreement Implementation Act of 1988 ('CAFTA')." *Id.* at __, 461 F. Supp. 2d at 1363 (citing Pub.L. No. 100-449, 102 Stat. 1851 (1988)). Further, the Court noted that CAFTA's Statement of Administrative Action ("US-CFTA SAA") demonstrated that § 1516a(g) "was enacted to reflect the law relating to appeals to [the United States Court of International Trade] as it existed at that time: 'Article 1904(15)(d) of the Agreement requires that the United

States and Canada amend their respective laws in order to ensure

that existing procedures concerning the refund, with interest, of

duties operate to give effect to a final binational panel

decision.'" *Tembec II*, 30 CIT at __, 461 F. Supp. 2d at 1363

(quoting US-CFTA SAA at 265-66).  In light of that language, the

*Tembec II* panel concluded that Congress wished to set up a system

in which appeals to both NAFTA binational panels and to this

Court "would result in the same relief with respect to refunds"

of cash deposits.  *See id.* at __, 461 F. Supp. 2d at 1363.

The Court additionally looked to US-CFTA SAA's explanation:

> In order to enable a successful plaintiff to
> reap the fruits of its victory . . . the
> statute authorizes the CIT [United States
> Court of International Trade] to enjoin the
> liquidation of entries of merchandise covered
> by certain types of challenged AD/CVD
> determinations upon request for such relief
> and a proper showing that the relief should
> be granted under the circumstances. 19 U.S.C.
> 1516a(c)(2).  Under existing caselaw,
> injunctive relief is granted automatically
> upon request in cases involving challenges to
> AD/CVD determinations made during the
> assessment stage of an AD/CVD proceeding.
> *Zenith Radio Corp. v. United States*, 710 F.2d
> 806 (Fed. Cir. 1983).  However, injunctive
> relief is rarely, if ever, granted in cases
> involving challenges to AD/CVD determinations
> made during the initial investigation stage
> of an AD/CVD proceeding.  *See, e.g.*, *American
> Spring Wire Corp. v. United States*, 578 F.
> Supp. 1405 (CIT 1984).

*See id.* at __, 461 F. Supp. 2d at 1363-64 (footnote omitted).

Accordingly, the Court reasoned that the subsections' legislative

history confirmed that Congress "intended subsections

1516a(g)(5)(B) and (C) to provide for the same liquidation

results when appeals were taken to a NAFTA panel, as when appeals

of final determinations were taken to this Court."  *Id.* at __,

461 F. Supp. 2d at 1364.

> The *Tembec II* panel elaborated:

> > Because a NAFTA panel would have no equity
> > powers . . . the device used to achieve [the
> > same liquidation results when appeals were
> > taken either to a NAFTA panel or to this
> > Court] was an injunction-like suspension of
> > liquidation.  Hence, because injunctions were
> > "rarely, if ever, granted" when appeals were
> > taken to this Court following final
> > determinations at the initial investigation
> > stage, i.e., the process leading to an AD/CVD
> > order, § 1516a(g)(5)(B) makes no provision
> > for a suspension of liquidation when such
> > final determinations are appealed to NAFTA
> > panels.  On the other hand, because
> > injunctions were viewed by Congress as
> > automatic when requested following the appeal
> > of a periodic review to this Court,
> > § 1516a(g)(5)(C) makes the "continued"
> > suspension of liquidation automatic when
> > these results are appealed to a NAFTA panel.

*Id.* at __, 461 F. Supp. 2d at 1364 (footnotes omitted).  Thus,

the *Tembec II* panel concluded that the simultaneously enacted

§§ 1516a(g)(5)(B) and (C) were designed to "codify Congress's

understanding of the law" at the time and that "[a]n examination

of contemporaneous judicial decisions . . . serve[s] to clarify

how they apply to the[se] facts . . . ."  *Id.* at __, 461 F. Supp.

2d at 1364-65.

Looking to caselaw at the time the statutes were enacted, the *Tembec II* panel explained that "[w]hen the subsections were drafted, there was no disagreement that if a periodic review were requested and an injunction granted, all unliquidated merchandise would be liquidated in accordance with the ultimate determination of: (1) the appeal of the periodic review; or (2) the appeal of the underlying AD duty order." *Id.* at __, 461 F. Supp. 2d at 1365 (footnote omitted). To illustrate this point, *Tembec II* cites *Sonco Steel Tube Div., Ferrum, Inc. v. United States*, 12 CIT 990, 993, 698 F. Supp. 927, 930 (1988) ("Apparently, there is agreement that where requested annual reviews have not been completed before a court decision finding an affirmative antidumping determination invalid there is no basis for liquidation with antidumping duties. Therefore, a court order totally invalidating an [agency's] original determination, which order occurs in the midst of an annual review, will result in the suspended entries being liquidated with no antidumping duties, [even without an injunction and] even though they were entered prior to the court's decision."). *See also Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1577 (Fed. Cir. 1990) ("The flaw in the government's argument is that without a valid antidumping determination in the original order, there can be no valid determination in a later annual review.").

*Tembec II* explained:

>Once the first periodic review of an AD/CVD order was completed, an appeal of the review determination to this Court would result in the entry of an injunction against liquidation.  This injunction would protect unliquidated entries from premature liquidation and ensure the victor the fruits of its victory resulting from its appeals.  Under the facts of this case, there can be little doubt that Congress intended that the suspension of liquidation found in § 1516a(g)(5)(C), which substituted for a court-ordered injunction, would serve to prevent premature liquidation of pre-*Timken* notice entries.  While Defendants may characterize this as retroactive relief, it is the result that would have obtained upon the entry of a court-ordered injunction at the time §§ 1516a(g)(5)(B) and (C) were enacted.  It necessarily follows that Congress, having intended parallel remedies, intended that the suspension of liquidation provided for in § 1516a(g)(5)(C) would provide the same result following a NAFTA panel decision, as would an injunction issued by this Court.

*Tembec II*, 30 CIT at __, 461 F. Supp. 2d at 1365-66.[14]

Therefore, as the court expressly adopts the *Tembec II* panel's

analysis, it finds that Commerce is obligated to liquidate all of

CWB's pre-*Timken* Notice entries, whose liquidation has been

---

[14]  The *Tembec II* Court found further support for its conclusion that liquidation should occur in accordance with a NAFTA panel's final decision based upon the absence of language in § 1516a(g)(5)(C) permitting an order of liquidation during or after the appeals process.  "The absence of an express liquidation provision in 19 U.S.C. § 1516a(g)(5)(C) demonstrates that, in implementing Chapter 19 of NAFTA into U.S. law, Congress relied upon the principle that a final appellate decision applies to all entries of subject merchandise for which liquidation has been suspended."  *Tembec II*, 30 CIT at __, 461 F. Supp. 2d at 1366 (citations and quotations omitted).

suspended, without regard to duties.

    This result is demanded by both logic as well as the
statute.  That is, because the subject imports caused no injury
during any time relevant to this inquiry, CWB should owe no
duties.  Indeed, while defendant claims that the pre-*Timken*
Notice duty deposits may be kept by the United States, the Notice
of Revocation appears to agree with the court.  The notice reads:

> This revocation does not affect the
> liquidation of entries made prior to January
> 2, 2006.  *Any entries of subject merchandise*
> *entered before January 2, 2006, are subject*
> *to administrative review.  If no review is*
> *requested we will liquidate at the rate in*
> *effect at the time of entry pursuant to 19*
> *CFR 351.212(c).*

Notice of Revocation, 71 Fed. Reg. at 8,275 (emphasis added).
Defendant focuses on the first sentence of this paragraph and
insists that, because Commerce stated that the "revocation does
not affect the liquidation" of pre-*Timken* Notice entries, those
entries must be liquidated under the now-invalidated AD/CVD
Orders.  As noted, however, an administrative review was
requested in this case.  The clear import of the last two
sentences of this paragraph, therefore, is that, if a review is
requested, then the entries will be liquidated in accordance with
the review results.  *See* 19 C.F.R. § 351.212(b)(1) (stating that,
afer a review of an antidumping duty order, Commerce "will
instruct the Customs Service to assess antidumping duties by
applying the assessment rate to the entered value of the

merchandise"); 19 C.F.R. § 351.212(b)(2) (stating that, after an

review of a countervailing duty order, Commerce "normally will

instruct the Customs Service to assess countervailing duties by

applying the rates included in the final results of the review to

the entered value of the merchandise").  Here, the necessity of a

review being obviated by the revocation of the AD/CVD Orders, the

notice clearly anticipates that the merchandise be liquidated

without unfair trade duties.

The purpose of collecting antidumping and countervailing

duties is to level the playing field so that producers can

compete fairly in the marketplace.  That purpose would not be

advanced by allowing the United States to keep CWB's deposits

when it has been conclusively established that the domestic

industry has suffered no material injury from the subject

imports.


CONCLUSION

Based on the foregoing, the court denies defendant's motion

to dismiss in part and grants defendant's motion in part,

dismissing the complaints of the Governments of Canada for lack

of standing; denies the Governments of Canada's motion for

summary judgment; and, grants CWB's motion for summary judgment.

It is hereby

ORDERED that the parties consult and jointly submit to the

court the form of a judgment comporting with this opinion on or

before November 3, 2008.  The parties' submission shall be made
to Casey Ann Cheevers, Case Manager, United States Court of
International Trade, One Federal Plaza, New York, New York,
10278.


                                        /s/Richard K. Eaton
                                         Richard K. Eaton

 Dated: October 20, 2008
        New York, New York