# United States Court of Appeals
# for the Federal Circuit

———————————

**CANADIAN WHEAT BOARD,**
*Plaintiff-Appellee,*

**and**

**GOVERNMENT OF CANADA,**
*Plaintiff-Appellee,*

**and**

**GOVERNMENT OF ALBERTA,**
*Plaintiff-Appellee,*

**and**

**GOVERNMENT OF ONTARIO,**
*Plaintiff-Appellee,*

**and**

**GOVERNMENT OF SASKATCHEWAN,**
*Plaintiff-Appellee,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

———————————

2010-1083

———————————

Appeal from the United States Court of International Trade in consolidated case nos. 07-CV-0058 and 07-CV-0059, Judge Richard K. Eaton.

———————————

Decided:  April 19, 2011

_____

DANIELLE SPINELLI, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington DC, argued for all plaintiffs-appellees. With her on the brief for plaintiff-appellee Government of Canada were RANDOLPH D. MOSS, and MICAH S. MYERS. Of counsel on the brief were MARK C. FLEMING, of Boston, Massachusetts. Also on the brief were M. JEAN ANDERSON and JOHN M. RYAN, Weil Gotshal & Manges LLP, of Washington, DC.

MARK A. MORAN, Steptoe & Johnson LLP, of Washington, DC, for plaintiff-appellee Canadian Wheat Board.  Of counsel were JAMIE B. BEABER and MATTHEW S. YEO.

LAWRENCE A. SCHNEIDER, Arnold & Porter LLP, of Washington, DC, for plaintiff-appellee Government of Alberta. With him on the brief was FRANCIS FRANZE-NAKAMURA.

MARK S. MCCONNELL, Hogan Lovells US LLP, of Washington, DC, for plaintiff-appellee Government of Ontario. With him on the brief were H. DEEN KAPLAN and JONATHAN T. STOEL.

MICHELE SHERMAN DAVENPORT, Davenport & James PLLC, of Washington, DC, for plaintiff-appellee Government of Saskatchewan.

JEANNE E. DAVIDSON, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the defendant-appellant.  With her on the brief were TONY WEST, Assistant Attorney General, PATRICIA M. MCCARTHY, Assistant

Director, and STEPHEN C. TOSINI. Of counsel was SCOTT D. MCBRIDE, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

————————————

Before NEWMAN, FRIEDMAN, and LOURIE, *Circuit Judges*.

FRIEDMAN, *Circuit Judge*.

The principal question is whether, after a North American Free Trade Agreement ("NAFTA") binational panel has invalidated a federal antidumping duty order and the Department of Commerce ("Commerce") has revoked the order, the invalidated duties that had been deposited prior to the date of that determination but that had not been liquidated, may be recovered from the United States by the depositors of those duties. The Court of International Trade (sometimes "Trade Court") held that the government could not retain those antidumping duties, and that the depositors could recover them. We affirm.

I

A. A brief summary of the statutory and administrative provisions governing antidumping duties and their judicial review is necessary to understand our decision.

Upon Commerce finding that a product from a foreign country has been "dumped," i.e., sold at less than fair value, in the United States and the International Trade Commission ("Commission") finding that such "dumping" has "materially injured" or "threatened with material injury" a domestic industry, Commerce issues an antidumping duty order intended to rectify the unfair trade practice. 19 U.S.C. §§ 1673b(b)(1)(A) (preliminary dumping determination), 1673d (final dumping determination);

1673b(a)(1) (preliminary injury determination), 1673d(b)(1) (final injury determination). Upon issuance of such order, the additional duties must be deposited with United States Customs and Border Protection ("Customs") "pending liquidation." *Id.* § 1673e(a)(3). "Liquidation means the final computation or ascertainment of duties on entries." 19 C.F.R. § 159.1.

If a party to the antidumping proceeding so requests, Commerce conducts an annual administrative review of the dumping margins for the product. 19 U.S.C. § 1675(a). A request for such review suspends liquidation of the duties while such review takes place. 19 U.S.C. § 1675(a)(2)(C); *see also Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002); 19 C.F.R. § 351.212(c)(1).

Similar provisions also cover countervailing duty orders, which are issued when a foreign government has subsidized sales in the United States. The same legal principles govern such duties. Although this case involves both types of duties, we do not discuss them separately and refer to them collectively as "antidumping duties."

Someone wishing to challenge an antidumping duty order has a choice of two methods of doing so. In any case, suit may be brought before the Court of International Trade. 28 U.S.C. § 1581(c); 19 U.S.C. § 1516a(2)(B). The Trade Court may enjoin liquidation of duties pending its decision. 19 U.S.C. § 1516a(c)(2).

If the "dumped" goods originated in Mexico or Canada, however, the antidumping order may be challenged before a NAFTA binational panel. 19 U.S.C. § 1516a(g). In certain circumstances, liquidation of entries may be suspended pending review by a NAFTA panel. 19 U.S.C. § 1516a(g)(5).

Congress has implemented both the NAFTA agreement and its predecessor through enacting legislation. *See* United States-Canada Free-Trade Agreement Implementation Act of 1988, Pub. L. No. 100-449, 102 Stat. 1851; NAFTA Implementation Act of 1993, Pub. L. No. 103-182, 107 Stat. 2057. Among other things, these statutes amended Section 516A of the Tariff Act of 1930, which governs judicial review of antidumping challenges.

B. In 2003 Commerce, acting in response to a petition by the United States domestic wheat industry, found that Canadian wheat had been sold in the United States at less than fair value. *Canadian Wheat Bd. v. United States*, 580 F. Supp. 2d 1350, 1354 (Ct. Int'l Trade 2008) (hereinafter "*Canadian Wheat Bd. II*"). The Commission determined that the dumping of the wheat had "materially injured" the United States' domestic wheat industry. *Durum and Hard Red Spring Wheat from Canada*, Inv. Nos. 701-TA-430A and 430B and 731-TA-1019A and 1019B, USITC Pub. 3639 (Oct. 2003). Commerce then issued an antidumping order. *Notice of Antidumping Duty Order: Hard Red Spring Wheat from Canada*, 68 Fed. Reg. 60,641.

The present case involves Canadian wheat that entered the United States in 2004, subject to Commerce's 2003 antidumping duty order. *Canadian Wheat Bd. v. United States*, 491 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2007) (hereinafter "*Canadian Wheat Bd. I*"). The appellee Canadian Wheat Board deposited the antidumping duties on the entries. Liquidation of those duties was suspended when Canadian Wheat Board subsequently requested an annual administrative review thereof. *Id.*

The Canadians challenged the Commission's injury determination before a NAFTA binational panel, which found that there was not substantial evidence in the

record that the "dumping" had materially injured the domestic wheat industry, and remanded the case to the Commission for further consideration. *In the Matter of: Hard Red Spring Wheat from Canada*, USA-CDA-2003-1904-06 (June 7, 2005). On remand, the Commission found that the domestic industry was not "materially injured" by the importation of the Canadian wheat. *Hard Spring Wheat from Canada*, Inv. Nos. 701-TA-430B and 731-TA-1019B, USITC Pub. 3806 (Oct. 2005). The domestic wheat industry challenged the Commission's remand-determination, but a NAFTA panel affirmed the finding, effective January 2, 2006. *In the Matter of: Hard Red Spring Wheat from Canada*, USA-CDA-2003-1904-06 (Dec. 12, 2005).

Commerce then revoked the antidumping duty order. *Revocation of Countervailing and Antidumping Duty Orders*, 71 Fed. Reg. 8,275 (Dep't of Commerce Feb. 16, 2006). Commerce instructed Customs to "terminate the suspension of liquidation of hard red spring wheat from Canada" and "cease collection of cash deposits" as of January 2, 2006. Commerce stated, however, that the "revocation does not affect the liquidation of entries made prior to January 2, 2006" and instructed Customs to liquidate those earlier entries "at the rate in effect at the time of entry."

Canadian Wheat Board filed suit in the Court of International Trade to enjoin Commerce from liquidating the antidumping duties on its wheat imported prior to January 2, 2006. *Canadian Wheat Bd. I*, 491 F. Supp. 2d at 1236. It also sought the return of those deposited duties. *Canadian Wheat Bd. II*, 580 F. Supp. 2d at 1354. After filing suit, Canadian Wheat Board withdrew its request for an administrative review by Commerce. *Canadian Wheat Bd. I*, 491 F. Supp. 2d at 1239.

The Trade Court granted a preliminary injunction against liquidation of those duties. *Id.* at 1237. On the merits, the Trade Court, after concluding that it had jurisdiction over the case, granted summary judgment for Canadian Wheat Board, holding that it was entitled to the return of its deposited unliquidated antidumping duties. *Canadian Wheat Bd. II*, 580 F. Supp. 2d at 1353-54. The court reasoned that because the entries were suspended and unliquidated when the antidumping duty order was revoked, they should not be subjected to those orders. *Id.* at 1368. The court clarified portions of its decision in an opinion denying reconsideration. *Canadian Wheat Bd. v. United States*, 637 F. Supp. 2d 1329, 1336 (2009) (hereinafter "*Canadian Wheat Bd. III*").

The court's judgment directed Commerce to instruct Customs to (1) liquidate all unliquidated entries of the Canadian wheat covered "without regard to antidumping and countervailing duties," and (2) "refund . . . all anti-dumping and countervailing duty cash deposits on all unliquidated entries" of the Canadian wheat "made on or before January 2, 2006."

## II

The government contends that the present action is an attempt to obtain judicial review of or to enforce a NAFTA panel decision and that the relevant statutes prohibit such a suit. The Canadian Wheat Board, however, is not challenging or seeking to enforce the NAFTA panel decision in which it prevailed. Its complaint is about Commerce's implementation of that decision. The challenge here is to the action of Commerce, not to that of the panel, and that is a challenge that may be properly made.

## III

The question on the merits is whether, after Commerce has revoked an antidumping duty order following a NAFTA panel determination that the Commission's injury determination (upon which that order was based) was invalid, Commerce may retain antidumping duties that had been deposited before the date of the NAFTA panel decision but were still unliquidated. The answer is no.

After the NAFTA panel issued its final order affirming the Commission's remand finding that the "dumping" had not materially injured the United States wheat industry, Commerce

1. revoked the antidumping duty order; and

2. terminated the imposition and collection of antidumping duties on future

importations of the Canadian wheat; but

3. proposed to retain and refused to return the antidumping duties the Canadians had previously deposited pursuant to the antidumping duty order that had been revoked because it turned out to have been erroneously issued.

The third action is so bizarre and unfair that we would be most reluctant to sustain it unless we could say with complete assurance that there was no doubt that Congress intended that result. Our analysis of the governing statutes and regulatory provisions indicates that Congress intended that foreign sellers in the Canadians' position could recover the suspended and unliquidated deposited antidumping duties involved in this case.

The government contends that these statutory provisions and their legislative history show that Congress

intended to preclude foreign sellers in the Canadians' position from recovering the duties they had deposited pursuant to antidumping orders that had been invalidated. We are not persuaded.

The language of the relevant statutory provisions does not explicitly address that question. There is nothing in that language, however, or in the legislative history of those provisions, that shows that Congress intended the result the government seeks.

One would expect that, after an antidumping duty order has been finally invalidated, Commerce thereafter would refuse to enforce it. Commerce did exactly that with respect to Canadian wheat that entered the country after January 2, 2006, the date of the NAFTA panel's final decision. But with respect to deposits of those duties made before that date, pursuant to the antidumping duty order that had been invalidated, Commerce, in effect, enforced the order.

Although those duties were still suspended and unliquidated, Commerce instructed Customs that because the "revocation [of the duty order] does not affect the liquidation of entries made prior to January 2, 2006," Customs should liquidate those duties "at the rate in effect at the time of entry." In other words, although the underlying antidumping duty order had been invalidated, Commerce directed that duties deposited under that order should be treated as if the order were still valid. Neither the statute nor its legislative history "suggests that Congress intended to produce such an inequitable result." *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1576 (Fed. Cir. 1990).

Commerce gave no explanation for its extraordinary and seemingly arbitrary action, and we cannot discern any valid justification for it. Although the government

now offers various explanations for Commerce's attempt to retain unliquidated amounts deposited under the invalid order, Commerce's action must be evaluated on the basis of what it said and did at the time, not on its counsel's subsequent justification for the agency action made in litigation challenging it. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1988).

An opinion of our predecessor court, although involving a quite different issue, points the way to the proper disposition of this case. *Atlantic Coastline R.R. v. United States*, 140 F. Supp. 569 (Ct. Cl. 1956), involved a railroad's claim against the United States for freight charges that the government had not paid, because the railroad allegedly had overcharged the government on prior shipments. The government had deducted those alleged overcharges from the amounts owed to the railroad. One of the railroad's contentions was that the alleged earlier overcharges were authorized by a filed tariff. The government countered that the tariff rates were based on an invalid order of the Interstate Commerce Commission. The Court of Claims agreed with the government on this point and stated:

> A tariff repeating an unlawful order of the Interstate Commerce Commission, can not, we think, be valid if the order authorizing it is invalid.

*Id.* at 571.

Similarly, an order retaining unliquidated deposited antidumping duties "can not, we think, be valid if the [antidumping duty] order authorizing it is invalid."

Once the NAFTA panel had finally determined that the unliquidated antidumping duty order was invalid–a ruling not subject to judicial review, *see* 19 U.S.C. § 1516a(g)(2)–Commerce had no valid basis for retaining

the unliquidated duties that the Canadians had deposited pursuant to that order. As between the Canadians and the United States, it was the Canadians, not the United States, that had the stronger claim to the deposited money.

IV

The government makes several other arguments, which need not detain us long. The government contends that 19 U.S.C. § 1516a(g)(5)(B) limited NAFTA panels to granting "prospective" relief in the present situation and that requiring Commerce to return the unliquidated duty deposits would be retroactive relief. We disagree. Barring Commerce from retaining the deposits and requiring it to return them after the NAFTA panel had determined that the antidumping order pursuant to which they were made was invalid, would be effectuating the NAFTA panel decision. It would be prospective, not retroactive action. The Trade Court's judgment, quoted in part above, was itself prospective. It directed that unliquidated entries be liquidated "without regard to . . . antidumping duties" and that Customs "refund" the antidumping duty cash deposits made on or before January 2, 2006—both prospective actions. Indeed, the statutory provisions prohibiting NAFTA panels from providing retroactive relief would appear to be directed against attempts by those panels to invalidate antidumping duties that had already been liquidated, not those still under suspension.

The government also argues that 19 U.S.C. § 3312(c) bars this action. That provision states that "no person" shall have a cause of action based on the claim that the United States acted "inconsistent with [NAFTA]." But, as this court recently explained, that provision bars actions "brought under NAFTA itself[,]" not under *domestic law*

implementing NAFTA. *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1340-41 (2008) (emphasis in original). As we have previously explained, this action was brought not as a challenge to the NAFTA panel decision itself but to the way Commerce implemented and carried out that decision.

Finally, the government contends that we should defer to Commerce's interpretation of the statute because Commerce is charged with applying and enforcing it. As we have stated, however, in instructing Customs to liquidate the deposited duties, Commerce did not provide a reasoned explanation for its action. Its brief statement to Customs fell far short of the "careful analysis of the statutory issue[s]" which would warrant any deference. *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005).

## V

The government contends that, under the statutory provisions stating the Court of International Trade's jurisdiction, that court had no jurisdiction to entertain this suit.

The jurisdiction of the Trade Court is defined in 28 U.S.C. § 1581. That section gives the court "exclusive jurisdiction" to review eight different types of "civil action[s]" listed in subsections (a) thorough (h), including "any civil action commenced under section 516A of the Tariff Act of 1930" (subsection (c)). These separate provisions are followed by a catchall provision, subparagraph (i), which gives the court, in addition to its jurisdiction under the first eight subsections, exclusive jurisdiction of "any civil action . . . against the United States . . ." that

> arises out of any law of the United States providing for –

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

. . .

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement and section 516A(g) of the Tariff Act of 1930.

The Trade Court had jurisdiction under subsections (i)(2) and (4), on the basis that Commerce's order involved the "administration and enforcement" of "duties . . . on the importation of merchandise for reasons other than the raising of revenue." Antidumping duty orders are imposed "for reasons other than the raising of revenue." They are imposed to protect American industries against unfair trade practices by foreign entities who sell in the American market. *See Consol. Bearings Co. v. United States*, 348 F.3d 997, 1002-03 (Fed. Cir. 2003) ("[L]iquidation instructions direct Customs to impose antidumping duties to protect domestic markets. As a result, an action against those instructions also arises as a challenge to 'tariffs, duties, fees, or other taxes on the

importation of merchandise for reasons other than the raising of revenue.' 28 U.S.C. § 1581(i)(2).").

The government contends that under *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992), "1581(i) jurisdiction may not be invoked" when jurisdiction under another subsection "is or could have been available." The government, however, does not assert that the Canadians could have brought the present suit under another subsection of section 1581. Instead, it argues that rather than invoking the NAFTA panel procedure, they could have initially directly challenged the antidumping duty order in a suit in the Trade Court, brought under section 1581(c).

It is most unlikely, however, that *Norcal/Crosetti* intended to bar jurisdiction under subsection (i) whenever a wholly different action seeking the same relief could have been brought under a different subsection of section 1581. Indeed, the government's theory would strongly discourage the use of the NAFTA panel system to challenge antidumping duties and make that procedure far less effective and useful than it was intended and expected to be.

## CONCLUSION

The judgment of the Court of International Trade is

## **AFFIRMED.**