# United States Court of Appeals for the Federal Circuit

———————————

**J.D. IRVING, LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, DEPARTMENT OF COMMERCE,**
*Defendants-Appellees*

———————————

2023-1652

———————————

Appeal from the United States Court of International Trade in No. 1:21-cv-00641-TMR, Judge Timothy M. Reif.

———————————

Decided: October 10, 2024

———————————

JAY CHARLES CAMPBELL, White & Case LLP, Washington, DC, argued for plaintiff-appellant. Also represented by WALTER SPAK.

ERIC LAUFGRABEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendants-appellees. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; ELIO GONZALEZ, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

———————————

Before STOLL and CUNNINGHAM, *Circuit Judges*, and CECCHI, *District Judge*.[1]

STOLL, *Circuit Judge*.

The sole issue in this appeal is whether the U.S. Court of International Trade (CIT) erred in holding that it lacked subject matter jurisdiction under 28 U.S.C. § 1581(i), the CIT's residual grant of jurisdiction. J.D. Irving (JDI), a Canadian producer, exporter, and importer of merchandise subject to a January 2018 antidumping duty order on certain softwood lumber products from Canada, appeals the CIT's dismissal of its case for lack of subject matter jurisdiction. Although JDI acknowledged that its action would normally arise under 28 U.S.C. § 1581(c), it asserted that the CIT has subject matter jurisdiction pursuant to § 1581(i). We determine that jurisdiction under § 1581(c) could have been available to JDI absent binational panel review because (1) the true nature of JDI's suit is a challenge to the Final Results of a second administrative review, and (2) JDI has not met its burden to show that administrative review and binational panel review would be manifestly inadequate. Because jurisdiction under § 1581(i) is strictly limited and may not be invoked when jurisdiction under § 1581(c) could have been available, we affirm the CIT's dismissal for lack of subject matter jurisdiction under § 1581(i).

---

[1]    Honorable Claire C. Cecchi, District Judge, United States District Court for the District of New Jersey, sitting by designation.

BACKGROUND

I

Before addressing the relevant facts and procedural history of this action, we begin with a brief overview of the applicable legal framework.

The U.S. Department of Commerce may levy antidumping duties on goods "sold in the United States at less than . . . fair value." *Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1196 (Fed. Cir. 2014) (quoting 19 U.S.C. § 1673). Upon the entry of merchandise covered by an antidumping duty order, "an importer must make a cash deposit of estimated duties (cash deposit rate)." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1000 (Fed. Cir. 2003) (citing 19 U.S.C. § 1673e(a)(3)). Under Commerce's accounting system, the actual liquidation—i.e., final computation of duties—of entries subject to an antidumping duty order may occur years after importation. *Id.* "Before final liquidation, any interested party may request an administrative review of the antidumping duty order." *Id.* (citing 19 U.S.C. § 1675). The statute providing for administrative review is 19 U.S.C. § 1675(a)(1). *N.M. Garlic Growers Coal. v. United States*, 953 F.3d 1358, 1360 (Fed. Cir. 2020). The Final Results of an administrative review "shall be the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties." *Consol. Bearings*, 348 F.3d at 1000 (quoting 19 U.S.C. § 1675(a)(2)(C)). Commerce's implementing regulation, 19 C.F.R. § 351.212, provides for the calculation of assessment rates. *Am. Signature, Inc. v. United States*, 598 F.3d 816, 820 n.5 (Fed. Cir. 2010). Absent a request for administrative review, "Commerce liquidates the merchandise at the cash deposit rates (i.e., the deposit rates at the time of entry)." *Consol. Bearings*, 348 F.3d at 1000 (citing 19 C.F.R. § 351.212(c)(1)(i)).

Section 1581(c) of Title 28 provides the CIT with exclusive jurisdiction over civil actions commenced under 19 U.S.C. § 1516a, which governs judicial review of Commerce's determinations in antidumping duty proceedings. *Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024). Someone wishing to challenge an antidumping duty order may bring suit before the CIT, or, if the "dumped" goods originated in Mexico or Canada, the antidumping order may be challenged before a binational panel. *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1347 (Fed. Cir. 2011). Liquidation of entries may be suspended pending a decision by either the CIT or a binational panel. *See id.*; 19 U.S.C. § 1516a(g)(5)(C).

The United States–Mexico–Canada Agreement (USMCA) went into effect on July 1, 2020, superseding the North American Free Trade Agreement (NAFTA). USMCA Article 10.12, entitled "Review of Final Antidumping and Countervailing Duty Determinations," provides a dispute settlement mechanism for purposes of reviewing antidumping duty determinations issued by the United States, Canada, and Mexico. *See* United States–Mexico–Canada Agreement, art. 10.12, July 1, 2020, OFF. U.S. TRADE REP., https://ustr.gov/sites/default/files/files/agreements/FTA/USMCA/Text/10_Trade_Remedies.pdf [hereinafter USMCA]. In pertinent part, USMCA Article 10.12 provides:

> 1. . . . [E]ach Party [i.e., the United States of America, the United Mexican States, and Canada] shall replace judicial review of final antidumping . . . duty determinations with binational panel review.

> 2. An involved Party may request that a panel review, based on the administrative record, a final antidumping . . . duty determination of a competent investigating authority of an importing Party to determine whether such determination was in accordance with the antidumping . . . duty law of

the importing Party. For this purpose, the anti-dumping . . . duty law consists of the relevant statutes, legislative history, regulations, administrative practice, and judicial precedents to the extent that a court of the importing Party would rely on such materials in reviewing a final determination of the competent investigating authority.

. . .

4. A request for a panel shall be made in writing to the other involved Party within 30 days following the date of publication of the final determination in question in the official journal of the importing Party. . . .

. . .

8. The panel may uphold a final determination, or remand it for action not inconsistent with the panel's decision. . . .

9. The decision of a panel under this Article shall be binding on the involved Parties with respect to the particular matter between the Parties that is before the panel.

. . .

15. . . . [E]ach Party shall:

> (a) maintain or amend its statutes or regulations to ensure that existing procedures concerning the refund, with interest, of antidumping . . . duties operate to give effect to a final panel decision that a refund is due;
>
> . . .
>
> (c) maintain or amend its statutes or regulations to ensure that:

> (i) domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel under paragraph 4 has expired . . . .

USMCA art. 10.12 ¶¶ 1, 2, 4, 8, 9, 15.

Section 1516a(g) of Title 19 codifies the binational panel review process set forth in USMCA Article 10.12. Section 1516a(g)(2) provides:

> (g) Review of . . . antidumping duty determinations involving free trade area country merchandise
>
> . . .
>
> > (2) Exclusive review of determination by binational panels
> >
> > If binational panel review of a determination is requested pursuant to . . . article 10.12 of the USMCA, then, except as provided in paragraphs (3) and (4)--
> >
> > > (A) the determination is not reviewable under subsection (a), and
> > >
> > > (B) no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise.

19 U.S.C. § 1516a(g)(2).

Section 1581(i) of Title 28 is the CIT's "residual" grant of jurisdiction that allows the court to take jurisdiction over designated causes of action founded on other provisions of law. *See Rimco*, 98 F.4th at 1052. It provides:

(i)(1)  In addition to the jurisdiction conferred upon the [CIT] by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the [CIT] shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--

    (A)  revenue from imports or tonnage;

    (B)  tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

    (C)  embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

    (D)  administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

(2) This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by--

    (A)  the [CIT] under [19 U.S.C. 1516a(a)]; or

    (B)  a binational panel under [19 U.S.C. 1516a(g)].

28 U.S.C. § 1581(i).

## II

In January 2018, Commerce published an antidumping duty order on certain softwood lumber products from Canada.  On April 1, 2019, Commerce initiated a first

administrative review (AR 1), which covered entries made between June 30, 2017, and December 31, 2018. On March 10, 2020, Commerce initiated a second administrative review (AR 2), which covered entries made between January 1, 2019, and December 31, 2019. Upon publication of the AR 1 Final Results on November 30, 2020, Commerce assigned to JDI the non-selected companies' assessment rate of 1.57%.

On March 4, 2021, Commerce initiated a third administrative review (AR 3), which covered entries made between January 1, 2020, and December 31, 2020. No party requested that Commerce review JDI's entries that would have been subject to AR 3. On April 16, 2021, Commerce instructed U.S. Customs and Border Protection: (1) to liquidate JDI's entries that would have been subject to AR 3 at the 1.57% rate then in effect, and (2) to continue to collect cash deposits on JDI's entries at this 1.57% rate.

On May 27, 2021, Commerce published its preliminary AR 2 results. Commerce assigned non-selected companies a preliminary rate of 12.05%, which would serve as the assessment rate and the cash deposit rate. On July 8, 2021, JDI filed a case brief in AR 2 addressed to the Secretary of Commerce, J.A. 88–89, asserting that "the [antidumping duty] cash deposit rate established for the year-2020 [period of review] must remain [JDI]'s cash deposit rate going forward (until changed in a review for a subsequent period, e.g., 2021, 2022, 2023)." J.A. 98.

On November 23, 2021, Commerce issued the AR 2 Final Results in an Issues and Decision Memorandum, in which it: (1) addressed the arguments JDI raised in its July 2021 case brief, and (2) amended the non-selected companies' rate to 11.59%. Commerce explained that although JDI "is under review in this 2019 review [i.e., AR 2] . . . no review of [JDI]'s 2020 sales is being conducted" and "[w]hen an entity is not under review, such as [JDI] in 2020 administrative review [i.e., AR 3],

[Commerce] do[es] not update its cash deposit rate." J.A. 175. Accordingly, "consistent with [19 U.S.C. § 1675(a)(1)], [Commerce's] regulations, and numerous rulings by the courts, [Commerce] . . . assigned [JDI] a cash deposit rate based on the non-selected companies' rate determined for these final results [in AR 2]." J.A. 176. Commerce published the AR 2 Final Results on December 2, 2021. On December 9, 2021, Commerce instructed Customs to collect cash deposits on JDI entries at the 11.59% rate assigned in the AR 2 Final Results.

On December 28, 2021, other interested parties requested binational panel review of the AR 2 Final Results pursuant to USMCA Article 10.12. Two days later, JDI filed a complaint and commenced an appeal of Commerce's Cash Deposit Instructions before the CIT. JDI requested that the CIT:

(A) Enter judgment in favor of [JDI];

(B) Hold and declare that it was unlawful for Commerce to issue *Cash Deposit Instructions* assigning [JDI] the [antidumping duty] cash deposit rate determined for Non-Selected Companies in the final results of the 2019 [antidumping duty] review;

(C) Order Commerce to instruct [Customs] (1) to reinstate [JDI]'s lawful [antidumping duty] cash deposit rate of 1.57% for imports of subject merchandise produced and exported by [JDI] entered on or after December 2, 2021, and (2) to refund [antidumping duty] cash deposits provided for such entries in excess of the 1.57% rate; and

(D) Grant [JDI] such additional relief as the [CIT] may deem just and proper.

J.A. 49. In the complaint, JDI asserted that, although the CIT's jurisdiction "would normally lie under 28 U.S.C. § 1581(c)," the CIT instead has jurisdiction over its action pursuant to § 1581(i). J.A. 33–34.

In January 2023, the CIT concluded that it lacked subject matter jurisdiction under § 1581(i) to hear the action and granted the Government's motion to dismiss. JDI appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review the CIT's dismissal for lack of subject matter jurisdiction and its statutory interpretation de novo as a question of law. *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1328 (Fed. Cir. 2012). "The burden of establishing jurisdiction rests on the party invoking it." *Rimco*, 98 F.4th at 1051.

### I

We start our analysis by reviewing our precedent analyzing the CIT's residual jurisdiction under § 1581(i). In *Rimco*, our court held the CIT lacked jurisdiction under § 1581(i) because jurisdiction would have been available and the remedy adequate under § 1581(c). There, Rimco did not request administrative review of Commerce's antidumping duty or countervailing duty orders. Instead, after Commerce issued liquidation instructions directing Customs to assess entries subject to the orders, Rimco filed a protest challenging Customs' assessment of antidumping duties and countervailing duties on its imported goods as "'excessive fines' in contravention of the Eighth Amendment," which Customs denied. *Rimco*, 98 F.4th at 1050–51. Rimco then filed an action before the CIT, seeking judicial review of Customs' denial of the protest, asserting, in pertinent part, that the CIT had exclusive jurisdiction under § 1581(i). *Id.* at 1051. The CIT dismissed for lack of subject matter jurisdiction. *Id.* at 1049.

On appeal, we explained that "[w]hether a party may properly invoke § 1581(i) is a two-step inquiry": (1) "we determine whether jurisdiction under a different subsection of § 1581 could have been available"; and if so, (2) "we ask whether the provided remedy would have been manifestly

inadequate." *Id.* at 1053 (citing *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019)). Starting with the first step, we explained that "[b]ecause the availability of jurisdiction under other subsections of § 1581 depends on the particular type of agency action challenged, we must first determine the true nature of an action." *Id.* at 1052–53 (explaining that the "true nature" factual inquiry "requires our court to identify the particular agency action underlying the claimed harm"). Viewing "the totality of Rimco's allegations," we agreed with the CIT "that the true nature of Rimco's action was to challenge Commerce's [antidumping duty] and [countervailing duty] rate determinations." *Id.* at 1053. We explained that "[i]nterested parties," such as Rimco, are directed to challenge Commerce's antidumping duty and countervailing duty determinations "via administrative review proceedings" and that "[s]ubsequent judicial review of such proceedings is available under the CIT's § 1581(c) exclusive jurisdiction." *Id.* at 1054.

Turning to step 2, we explained that because § 1581(c) jurisdiction was available, the CIT's § 1581(i) residual jurisdiction was unavailable unless the appellant could show that the remedy afforded by § 1581(c) would be manifestly inadequate. We further explained that a "manifestly inadequate remedy" is "an exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *Id.* (internal quotation marks omitted). Attempting to frame the § 1581(c) remedy as inadequate, Rimco unsuccessfully argued that Commerce "lacks institutional competence to judge the constitutionality of its own determinations." *Id.* We explained that: (1) "Commerce could have removed the constitutional issue by addressing the statutory appropriateness of its rate determinations"; and (2) even when Commerce is unable to make constitutional findings, it "will nevertheless serve its immensely useful record-development and fact-finding functions." *Id.* at 1055. Rimco

"could have sought . . . administrative review to sufficiently challenge" Commerce's antidumping duty and countervailing duty determinations, and, had Rimco been "dissatisfied with Commerce's administrative review determination, it could have rightfully sought judicial review on the record under the CIT's exclusive jurisdiction." *Id.* We thus held that the "statutory process outlined by Congress in § 1581(c) . . . is neither unworkable, nor futile." *Id.*

In *Consolidated Bearings*, on the other hand, we held that "no other subsection of 28 U.S.C. § 1581 was or could have been a basis for jurisdiction" and, thus, the CIT had correctly found jurisdiction under § 1581(i). *Consol. Bearings*, 348 F.3d at 999. There, the appellant brought suit in the CIT: (1) to challenge liquidation instructions from 1998, by which Commerce directed Customs to liquidate all entries of antifriction bearings from Germany that had not been liquidated by the instructions from 1997; and (2) to compel Commerce to apply the antidumping rates in the June 1997 amended final results to the appellant's entries of antifriction bearings from Germany. *Id.* at 1001. The appellant did not challenge or object to the final results; rather, it sought "application of those final results." *Id.* at 1002. We explained that, because the appellant was "not challenging the final results," § 1581(c) could not have been a source of jurisdiction. *Id.* (acknowledging that, had the appellant brought the action to challenge the final results of the administrative review, the argument that § 1581(c) jurisdiction could have been available might have more merit). Because no other subsection of § 1581 was or could have been a basis for jurisdiction, we did not reach step 2— whether the remedy would have been "manifestly inadequate." *See id.*

## II

Turning to the facts of this case, we conclude that the CIT did not err in holding that it lacked subject matter jurisdiction under § 1581(i) because: (1) § 1581(c)

jurisdiction could have been available to JDI, and (2) JDI has not met its burden to show that the alternative remedy (administrative review and binational panel review) would be manifestly inadequate. *See Rimco*, 98 F.4th at 1052.

JDI argues that the "true nature" of its action is a challenge to Commerce's "administration and enforcement" of the AR 2 Final Results, as opposed to a challenge to the Final Results themselves. Appellant's Br. 24. We are not persuaded.

Similar to *Rimco*, we view the "true nature" of JDI's suit as a challenge to the AR 2 Final Results. The "particular agency action underlying [JDI's] claimed harm" is Commerce's assignment of a cash deposit rate higher than 1.57% in the AR 2 preliminary results and Final Results. *Rimco*, 98 F.4th at 1052. Commerce explained in its November 23, 2021 Issues and Decision Memorandum for the AR 2 Final Results that it "will assign [JDI] a cash deposit rate based on the final results of this administrative review [i.e., AR 2]." J.A. 175. JDI confirmed on December 21, 2021, that "[t]he title of the final determination" for which it intended to commence judicial review is "Certain Softwood Lumber Products From Canada: Final Results of Antidumping Duty Administrative Review; 2019" published on December 2, 2021—not Commerce's instructions from December 9, 2021. J.A. 110. Accordingly, the proper source of the CIT's jurisdiction over JDI's action would have been § 1581(c). *See Consol. Bearings*, 348 F.3d at 1002 ("Subsection (c) grants the [CIT] jurisdiction over actions brought under [19 U.S.C. § 1516a], which includes challenges to the final results of an administrative review by a participant in that review."). In fact, JDI conceded in its complaint that the CIT's jurisdiction "would normally lie under 28 U.S.C. § 1581(c)." J.A. 34.

During oral argument, JDI nonetheless asserted that § 1581(c) jurisdiction was unavailable because "the final results of the 2019 review [i.e., AR 2] were taken to a USMCA

binational panel." Oral Arg. at 1:59–2:11, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1652_0606202 4.mp3. We reject JDI's attempt to use § 1581(i) to make an end run around the binational panel's exclusive review. Indeed, § 1581(i)(2)(B) expressly prohibits JDI's assertion, stating that the subsection "shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by . . . a binational panel under [19 U.S.C. § 1516a(g)]." Allowing the CIT to exercise concurrent jurisdiction with a binational panel "would strongly [and impermissibly] discourage the use of the [binational] panel system to challenge antidumping duties and make that procedure far less effective and useful than it was intended and expected to be." *Canadian Wheat*, 641 F.3d at 1351. USMCA Article 10.12 explicitly provides that the United States, Mexico, and Canada "shall . . . maintain or amend [their] statutes or regulations to ensure that . . . domestic procedures for judicial review of a final determination may not be commenced until the time for requesting a panel under paragraph 4 [i.e., 30 days following the publication date of the final determination] has expired." USMCA art. 10.12 ¶¶ 4, 15(c)(i). Section 1516a also provides that, "[f]or a determination with respect to which binational panel review has commenced," a CIT action "may not be commenced" until "the day after the date as of which" the binational panel "has dismissed binational panel review of the determination for lack of jurisdiction." 19 U.S.C. § 1516a(a)(5)(C); *see also id.* § 1516a(g)(12) (providing for the "[t]ransfer of final determinations for judicial review *upon suspension of article 10.12 of the USMCA*" (emphasis added)). It is clear from the USMCA and statutory language that when an antidumping duty determination is reviewable by a binational panel, judicial review by the CIT is unavailable unless and until the time for requesting a panel has expired or the panel has dismissed its review for lack of jurisdiction (or, the operation of USMCA Article 10.12 has been suspended).

JDI next asserts that the CIT has jurisdiction under § 1581(i) because neither binational panel review nor the administrative review process can provide adequate relief. Again, we disagree.

Binational panels have the authority to review a final antidumping determination and determine whether it "was in accordance with" the importing country's antidumping duty law, which "consists of the relevant statutes, legislative history, regulations, administrative practice, and judicial precedents to the extent that a court of the importing [country] would rely on such materials in reviewing a final determination." USMCA art. 10.12 ¶ 2. And if the panel remands the determination (instead of upholding it), the administering authority—i.e., Commerce—"*shall, within the period specified by the panel . . . , take action not inconsistent with the decision of the panel.*" 19 U.S.C. § 1516a(g)(7)(A) (emphases added); *see also* USMCA art. 10.12 ¶ 8. Accordingly, here, if the binational panel holds that Commerce's AR 2 Final Results are not in accordance with U.S. antidumping duty law and remands, Commerce must take action consistent with the panel's decision, which is "binding on the involved Parties." USMCA art. 10.12 ¶ 9.

In *Canadian Wheat*, a NAFTA binational panel found that the record lacked substantial evidence that the "dumping" at issue had materially injured the domestic wheat industry and remanded the case to the International Trade Commission for further consideration. *Canadian Wheat*, 641 F.3d at 1347. On remand, the Commission found that the domestic industry was not "materially injured" by the importation of the Canadian wheat, which the NAFTA panel then affirmed. *Id.* Commerce then revoked the antidumping duty order, while entries were still "suspended and unliquidated." *See id.* at 1347–49. We explained that "[o]nce the NAFTA panel had finally determined that the unliquidated antidumping duty order was invalid . . . Commerce had no valid basis for retaining

the unliquidated duties that the Canadians had deposited pursuant to that order." *Id.* at 1349–50 ("One would expect that, after an antidumping duty order has been finally invalidated [by a binational panel], Commerce thereafter would refuse to enforce it."). Accordingly, here, if the binational panel invalidates the AR 2 Final Results, Commerce would not assess JDI's suspended and unliquidated entries at AR 2's final 11.59% rate, and JDI would receive appropriate refunds for deposits made at that higher rate. *See* 19 U.S.C. § 1516a(g)(5)(C) (providing for the suspension of liquidation); USMCA art. 10.12 ¶ 15(a) (a binational panel may enter a final decision that a refund is due). Accordingly, we reject JDI's argument that binational panel review and administrative review would be manifestly inadequate.

JDI nonetheless argues that USMCA panel review of the AR 2 Final Results would be manifestly inadequate because such panels lack equitable or injunctive power. Although a remand by the binational panel differs from an injunction, the inquiry here is not whether the provided remedy would have been equal to JDI's desired remedy; rather, it is whether the provided remedy would have been manifestly inadequate. *E.g.*, *Rimco*, 98 F.4th at 1054. Because JDI has not shown that administrative review and USMCA panel review would be manifestly inadequate, § 1581(i) jurisdiction is improper.

CONCLUSION

We have considered JDI's other arguments and find them unpersuasive. For the foregoing reasons, we conclude that the Court of International Trade did not err in dismissing the case for lack of subject matter jurisdiction.

**AFFIRMED**